**UNITED STATES of America,
Appellee,**

v.

**David H. WENGER, Appellant.**

**No. 365, Docket 71–1728.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1972.

Decided Jan. 26, 1972.

Lloyd A. Hale, New York City, for appellant.

Richard B. Buhrman, Atty., Tax Division, Department of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., Meyer Rothwacks, Crombie J. D. Garrett and John P. Burke, Attys., Tax Division, Department of Justice, Washington, D. C., Robert A. Morse, U. S. Atty. for the Eastern District of New York, Brooklyn, of counsel), for appellee.

Before FRIENDLY, Chief Judge, and MOORE and OAKES, Circuit Judges.

MOORE, Circuit Judge:

David H. Wenger appeals from his conviction of having wilfully attempted to evade part of his 1963 individual income tax in violation of 26 U.S.C. § 7201. As we find appellant's numerous contentions advanced on this appeal without merit, the judgment of conviction is affirmed.

At trial, the central factual issue was whether appellant had fraudulently designed a transaction which would enable him to report part of his ordinary income as short-term capital gain. According to the Government, the benefit which accrued to appellant by means of such reporting was that certain income became non-taxable as short-term capital gain because it was offset by valid long-term capital losses. This treatment resulted in an understatement of taxable income and a reduction of tax liability of approximately $8,500. The evidence introduced at trial clearly established that the transaction which supposedly resulted in short-term capital gain was a transparent sham.

The Government's claim that Wenger actually received ordinary income and not a short-term capital gain is based in substance on the following facts.

Wenger, a certified public accountant since 1937, was the accountant for the pension fund (the Fund) of Local 11, AFL–CIO, Chain Restaurant Service (the Union) and advised the Union with respect to loans made by the Fund. In the summer of 1963, Handy Associates, Inc. (Associates) needed to borrow money. Associates' counsel and Wenger arranged to have the Fund loan $150,000 to Associates, Wenger's finder's fee to be $15,000. Instead of being paid in cash or by check, which would have been ordinary income, a scheme (there was proof from which a jury could so find) was devised whereby Wenger would buy from Associates' President, John Handy, antiques for $5,000 and sell them shortly thereafter for $20,000, thus realizing a short-term capital gain of $15,000, namely, Wenger's finder's fee.

The methods used to accomplish this transaction need only be sketchily described. John Handy had purchased on May 27, 1963, certain antiques from an antique dealer, Frank Partridge, Inc. The antiques were delivered to John Handy's residence. On August 12, 1963, Wenger bought from John Handy for $5,000 specified items, one pair of commodes, one pair of Foochow dogs, Chinese porcelain, a pair of Kngsi vases, and a Chippendale table. Less than a month later John Handy instructed

Frank Partridge, Inc., to repurchase these same antiques from Wenger for $20,000—a meteoric rise scarcely to be equalled on any stock exchange. The antiques which were the subject of this transaction had been selected not by Wenger but by Edward Handy, son of John Handy. No physical delivery of the antiques was ever made by John Handy to Wenger nor by Wenger upon the resale to the Partridge firm. The Partridge firm issued its check for $20,000 to Wenger in payment for the antiques and Wenger deposited the check in his bank account. The Partridge firm immediately resold the antiques to Associates for $20,000, Partridge apparently handling the transaction as an accommodation to John Handy.

Wenger, who had long-term capital losses, then applied his short-term capital gain against these losses. Had Wenger reported his finder's fee as ordinary income, his taxable income would have been much larger. Thus arose the charge of wilful tax evasion.

■ From the evidence presented on the trial, the jury could easily have found established beyond a reasonable doubt all the elements necessary for conviction of the crime charged in count I of the indictment.

Count II charged Wenger and his co-defendant, counsel for Associates, with conspiring to attempt to evade Wenger's 1963 income tax. As to this count, the trial court granted defendants' motion for judgment of acquittal.

■■ In addition to his argument as to failure of proof with respect to the essential elements of the crime charged

in count I, Wenger urges that judgment of acquittal on count II required the same result with respect to count I; prejudice resulting from testimony admitted solely against the co-defendant; hearsay testimony before the Grand Jury; delay between investigation and indictment; an inflammatory summation by the prosecutor; and error in the trial court's charge. A review of the trial transcript established that the conspiracy count was dismissed because the Judge thought there was insufficient evidence of an agreement between the two alleged co-conspirators. (Tr. pp. 835–841). Thus, the dismissal of the conspiracy count did not preclude a conviction for the separate and distinct offense [1] of tax evasion.[2] The hearsay problems which arose during the course of the trial were cured when the out-of-court declarant became a witness.

■ The attack on the indictment as founded solely on hearsay is totally without merit. In addition to the Special Agent's testimony before the Grand Jury, the Grand Jury was permitted to examine ten material documents. These documents served to corroborate the Special Agent's testimony. Secondly, Wenger has failed to establish that:

" . . . the grand jury . . . [was] misled into believing it . . . [was], getting eye-witness testimony from the agent . . . [or that there was] a high probability that with eye-witness rather than hearsay testimony the grand jury would not have indicted." [3]

■ Similarly unpersuasive is the contention that the "deliberate delay" in returning the indictment requires dis-

1. *Cf.*, Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

2. Under the facts of this case we need not determine when the dismissal of one count of an indictment might require the dismissal of other counts at the same trial. *Cf.*, United States v. Coplon, 185 F.2d 629, 633 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952);

United States v. Rainone, 192 F.2d 860, 861 (2d Cir. 1951); United States v. Marcone, 275 F.2d 205, 206 (2d Cir.), cert. denied, 362 U.S. 963, 80 S.Ct. 879, 4 L.Ed.2d 877 (1960); United States v. Carbone, 378 F.2d 420 (2d Cir. 1967).

3. United States v. Leibowitz, 420 F.2d 39, 42 (2d Cir. 1969); also quoted in United States v. Rifkin, 451 F.2d 1149, 1154 (2d Cir. 1971).

missal. The indictment was returned within the statute of limitations and no prejudice resulted from the preindictment delay. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

The prosecutor's summation, while forceful, was not prejudicial, and the charge to the jury was proper under the facts of the case. No error is to be found in these points.

Affirmed.