**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas MEACHAM, Joseph Ward, Edward William Gilroy, Bobby Gene Hayes and Donald L. Metsger, Defendants-Appellants.**

No. 79–5190.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1980.

Barry Hess, Mobile, Ala., for Meacham.

Howard M. Zeidwig, Fort Lauderdale, Fla., for Ward.

Theodore S. Worozbyt, Atlanta, Ga., for Gilroy and Hayes.

Thomas M. Haas, Mobile, Ala., for Metsger.

Wm. A. Kimbrough, Jr., U. S. Atty., William R. Favre, Jr., Asst. U. S. Atty., Mobile, Ala., for the U. S.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

Appellants Thomas Meacham, Joseph Ward, Edward William Gilroy, Bobby Gene Hayes and Donald L. Metsger, along with three others, were indicted on three counts of violating laws relating to controlled substances. Count One charged that the eight had attempted in violation of 21 U.S.C. § 846 to possess marijuana with intent to distribute. Count Two charged that they had conspired in violation of 21 U.S.C. § 846 to attempt to distribute marijuana and to possess it with the intent to distribute. Count Three charged that they had conspired in violation of 21 U.S.C. § 963 to attempt to import marijuana. Meacham pleaded guilty to Count Three, and the other charges were dropped. Ward, Gilroy, Hayes and Metsger were tried. At the close of the government's case, the court granted the defendants' motions to dismiss Count One.[1] Ward, Gilroy and Hayes were convicted on Counts Two and Three; Metsger was convicted on Count Three and acquitted on Count Two.[2]

This appeal presents a plethora of issues. Meacham makes a three-pronged attack on the validity of his guilty plea. The four other appellants claim that Counts Two and Three failed to charge an offense.[3] Hayes

---

1. The government had not established that the Southern District of Alabama was a proper venue for the trial of the offense charged in Count One.

2. The other defendants are not before this court. One pleaded guilty and did not appeal, one was dismissed as a defendant at the close of the government's case, and one was acquitted.

3. Gilroy's appeal presents a special problem. Before trial all the defendants except Gilroy moved to adopt the motions made by the other defendants. Several defendants, not including Gilroy, moved to dismiss the indictment on the grounds that it did not charge a crime. Hayes raised the outrageous-conduct issue. The

and Gilroy complain that the conduct of the government agents who investigated the conspiracy was so "outrageous" that the charges should have been dismissed. Ward claims that the district court's refusal to allow him to cross-examine a government witness concerning certain recorded telephone conversations deprived him of his Sixth Amendment right to confront witnesses against him. And, finally, Ward and Metsger complain of the district court's refusal to sever Ward's trial from theirs. Having concluded that Counts Two and Three do not charge an offense, we reverse all the convictions and vacate Meacham's guilty plea.

## FACTS

The evidence establishes that the appellants conspired to import marijuana from Colombia into the United States. They arranged to have a pilot named Travis Paul and a copilot Paul had selected fly from Ocean Springs, Mississippi, to Colombia to get a load of marijuana. The two pilots were to have flown the marijuana from Colombia to a small airstrip in Newborn, Georgia. Much to the appellants' distress, Paul turned out to be a Drug Enforcement Administration (DEA) informant, and the copilot turned out to be an undercover agent. On October 8, 1978, at the direction of the appellants, Paul and the copilot began their flight in a plane owned by Metsger.[4] Just before reaching the Colombian coast, the plane developed fuel problems and crash-landed in the sea. The crew of a passing ship rescued Paul and the copilot.

On the night of October 10, DEA Special Agent Jack Taylor, who was in charge of the investigation, staged the return of Paul and the copilot to Newborn. Two of the defendants were apprehended at the Newborn airstrip that night. The others were arrested during the following weeks.

It seems likely that, by using the evidence introduced at trial, the government successfully could have prosecuted the appellants on charges of conspiring to import, of conspiring to possess with intent to distribute, of attempting to import or of attempting to possess with intent to distribute. But the government instead charged something new—conspiracy to attempt. It is the effect of this creative indictment-scrivening that we must consider.

### Conspiracy to Attempt

Count Two of the Indictment alleged a violation of 21 U.S.C.S. § 846, and Count Three alleged a violation of 21 U.S.C.S. § 963. These statutes are identical. They provide:

Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

"This title" as used in § 846 refers to the Controlled Substances Act. "This title" as used in § 963 refers to the sections in the drug abuse chapter on Imports and Exports.[5] Each of the statutes is a part of Chapter 13 of Title 21 of the United States Code.

docket sheet and trial transcript show that Gilroy made no motions relevant to the questions at issue on appeal, although at one point Gilroy's attorney adopted the argument of Metsger's attorney which arguably might include a challenge to the indictment. In its written order denying the motions to dismiss the indictments, the district court listed Gilroy as a movant. We discuss the effect of Gilroy's failure to preserve these questions, if there was one. *Infra*, at 509, 510.

4. The parties never clearly established at trial whether the appellants intended for Paul and

the copilot to return to the United States with marijuana or whether, as Ward indicated in his later telephone conversations with DEA agent David Hoyt, discussed *infra*, this was only a "loyalty flight." A loyalty flight is one in which the pilots are supplied at the source point with something that looks like a controlled substance but is not. They are then tested to see if they are "trustworthy."

5. *See* History; Ancillary Laws and Directives; References in Text, following 21 U.S.C.S. § 801 and 21 U.S.C.S. § 951.

Count Two of the indictment alleged that the defendants "did conspire to attempt" to violate 21 U.S.C. § 841, the substantive-offense statute that proscribes the possession of marijuana with intent to distribute. Count Three alleged that the defendants "did conspire to attempt" to violate 21 U.S.C. § 952, the substantive-offense statute that proscribes the importation of marijuana.

### Sufficiency of Indictments

The leading case concerning the sufficiency of indictments is *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), in which the Court declared:

> In a number of cases the Court has emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured. These criteria are, first, whether the indictment 'contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, ' "in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Cochran and Sayre v. United States*, 157 U.S. 286, 290, [15 S.Ct. 628, 630, 39 L.Ed. 704]; *Rosen v. United States*, 161 U.S. 29, 34, [16 S.Ct. 434, 480, 40 L.Ed. 606].'

369 U.S. at 763–64, 82 S.Ct. at 1047. *See also United States v. Contris*, 592 F.2d 893 (5th Cir. 1979); *United States v. Guthartz*, 573 F.2d 225 (5th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978); *United States v. Smith*, 523 F.2d 771 (5th Cir. 1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976). The first criterion listed by the Supreme Court has two parts. In addition to apprising the defendant of what he must meet, an indictment must allege each element of the offense charged. *United States v. Mullens*, 583 F.2d 134 (5th Cir. 1978); *United States*

*v. Purvis*, 580 F.2d 853 (5th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979); *Honea v. United States*, 344 F.2d 798 (5th Cir. 1965). It is axiomatic that the elements alleged must amount to an offense. As we noted in *United States v. London*, 550 F.2d 206, 211 (5th Cir. 1977), "The questions whether an indictment sufficiently apprises a defendant of the charges against him and whether an indictment states an offense are both conceptually and procedurally distinct."

Here, as in *Russell*, the indictment clearly satisfies the second *Russell* requirement. The appellants should have no difficulty knowing to what extent this indictment protects them from being put in double jeopardy. The indictment also satisfies the second half of the first *Russell* requirement, *i. e.*, that the defendants be apprised of what they are to be prepared to meet. Because, however, the elements listed in the indictment failed to state an offense against the United States, the indictment was insufficient and should have been dismissed.

### The Charges

■ The appellants were convicted of conspiracies: conspiracy to attempt to import marijuana and conspiracy to attempt to distribute marijuana and to possess it with the intent to distribute. In order successfully to prosecute a conspiracy, the government must be able to point to two separate provisions: one making the act of conspiring a crime and one making the object of the conspiring a crime. *United States v. Clay*, 495 F.2d 700 (7th Cir.), *cert. denied*, 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164 (1974); *Powe v. United States*, 109 F.2d 147 (5th Cir.), *cert. denied*, 309 U.S. 679, 60 S.Ct. 717, 84 L.Ed. 1023 (1940). The language of §§ 846 and 963 underscores this proposition; the sections make it a crime to conspire to commit an "offense defined in this title."

The indictment in this case alleged that the crimes the appellants had conspired to commit were (1) attempting to possess marijuana with the intent to distribute and (2)

attempting to import marijuana. The parties are in disagreement over whether the government can point to a provision making these attempts criminal. The parties agree that, absent a statute providing to the contrary, an attempt to commit a federal offense is not itself a federal offense. *United States v. York*, 578 F.2d 1036 (5th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978). The government contends that §§ 846 and 963 make certain attempts criminal. We agree. It is the next step in the government's argument that occasions the problem. The government asserts that the sections simultaneously create two substantive offenses and provide the government with the authority to prosecute conspiracies to commit those offenses.

■ Without question §§ 846 and 963 make certain attempts and conspiracies criminal. These statutes could have been used to prosecute the appellants for conspiring to violate or for attempting to violate the substantive-offense provisions of the drug laws to which they apply. But this was not done. The government seeks yeoman's performance out of §§ 846 and 963 by using them as conspiracy statutes and as substantive-offense statutes through which the conspiracy statutes can be applied.[6]

■ Stripped to its essentials, the issue in this case is whether Congress, in using the words in §§ 846 and 963 "any offense defined in this title," intended to include the offense of attempt. We have concluded that Congress had no such intent. Acceptance of the government's position would lead to the conclusion that §§ 846 and 963 describe four separate crimes apiece: conspiracy, attempt, conspiracy to attempt and attempt to conspire. We do not believe Congress intended to create four discrete crimes with the three words "attempts or conspires."

Acceptance of the government's position also would lead to uncertainty concerning the penalties for violations of §§ 846 and 963, which do not establish separate penalties for attempts or conspiracies. The provisions allow imposition of prison terms and fines equal to those that can be imposed for the commission of the crimes that were the objects of the attempts or conspiracies. Although it may be argued that one convicted of conspiracy to attempt to violate the drug laws should be given the sentence he could have received for the commission of the substantive offense he conspired to attempt to commit, we are unconvinced that Congress has acted in such a circuitous and uncertain way.

In denying the appellants' motions to dismiss the indictments for failure to state an offense, the district court relied on four conspiracy-to-attempt cases. *United States v. Wenger*, 455 F.2d 308 (2d Cir. 1972); *United States v. Baum*, 435 F.2d 1197 (7th Cir. 1970); *Forman v. United States*, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); and *United States v. Clay, supra*. We have found no others. In three of the cases there is no discussion of the propriety of the charges. The fourth, *Clay*, is the only case that addresses the question whether conspiracy to attempt is a federal crime. In *Clay*, the court held that it is a federal crime to conspire to attempt to enter a savings and loan association in violation of 18 U.S.C. § 2113(a).

These four cases are inapposite. In two, *Wenger* and *Forman*, the statutory base upon which the government charged the conspiracies is not set forth. In *Baum* and *Clay* the defendants were prosecuted under the general conspiracy statute, 18 U.S.C. § 371, in conjunction with other statutes expressly making attempts criminal. It is reasonable to assume the defendants in *Wenger* and *Forman* were prosecuted in a similar manner. Thus, in those four cases, the government did not attempt to use a single statute to prosecute a conspiracy to attempt. And certainly it did not use a

---

6. Drug-abuse laws contain their own conspiracy provisions. Consequently, the general criminal conspiracy statute, 18 U.S.C. § 371, may not be used to prosecute conspiracies to violate the drug-control laws. *United States v. Mori*, 444 F.2d 240 (5th Cir.), *cert. denied*, 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971).

single statute as unclear as §§ 846 and 963 to prosecute a conspiracy to attempt. Because we hold that §§ 846 and 963 do not authorize conspiracy-to-attempt prosecutions, we need not reach the more elusive question at issue in *Clay, i. e.,* whether the government may prosecute the conceptually bizarre crime of conspiracy to attempt in instances where separate provisions make both the conspiracy and the attempt criminal offenses.[7]

Our holding that the counts on which the appellants were convicted do not charge an offense does not end our inquiry with respect to Meacham and Gilroy. Meacham faces three obstacles that arguably could preclude his taking advantage of this holding, and Gilroy faces one. Neither Gilroy nor Meacham preserved the issue in the district court, Meacham has not raised the issue on appeal, and Meacham pleaded guilty, thereby foreclosing inquiry into many of the issues he otherwise could have raised on appeal.

### Preserving Issue at Trial

■ With respect to the failure to raise the issue in the district court, we hold that the right to be free of prosecution under an indictment that fails to charge an offense is a substantial right. Therefore, even though neither Meacham nor Gilroy brought the defect in the indictment to the district court's attention, we may notice the defect on appeal. Fed.R.Crim.P. 52(b); *Walker v. United States,* 342 F.2d 22 (5th Cir.), *cert. denied* 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965).

### Presenting Issue on Appeal

■ Meacham's failure to raise the issue before this court likewise does not preclude our reversing his conviction on the grounds that the indictment did not charge an offense. Fed.R.Crim.P. 12(b)(2) provides that the failure of an indictment to charge an offense "shall be noticed by the court at any time during the pendency of the proceedings." This language requires district courts, *Purvis, supra* at 858, and appellate courts, *Government of the Virgin Islands v. Greenidge,* 600 F.2d 437 (3d Cir. 1979), to raise the issue *sua sponte.* See *United States v. Musquiz,* 445 F.2d 963 (5th Cir. 1971); *United States v. Clark,* 412 F.2d 885 (5th Cir. 1969).

### Meacham—Guilty Plea

■ The final question with respect to the effect of the insufficient indictment involves Meacham's guilty plea. By pleading guilty, a defendant waives many of the objections to his conviction that he otherwise could have raised on appeal. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). He does not, however, waive all objections. In *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), the Court said:

> The point of [*Tollett* and other cases holding that certain objections are waived by

---

7. In *Clay* the court upheld the conspiracy-to-attempt conviction on the grounds that the defendants, whose plot to enter the building was not successful, had "necessarily contemplated their attempting to gain entry into the building," 495 F.2d at 710. We do not fault that reasoning, but note that it would be the height of absurdity to conspire to commit an attempt, an inchoate offense, and simultaneously conspire to fail at the effort. It would be even more inane to commit the other crime the government would have us recognize—attempt to conspire. A scenario leading to a prosecution for that offense might read something like this: A suggests to B that they get together to discuss the possibility of violating the criminal code and to select the provisions they will vio-

late. B agrees to meet and talk. While ascending the staircase leading into the room in which they will meet, both slip and fall down the stairs. A dies of his injuries. B, who survives, is prosecuted for an attempt to conspire.

The propriety of applying conspiracy statutes "through" attempt statutes is not before us in this case. We note the possibilities such an application could cause merely to highlight our belief that, had Congress intended that there be prosecutions for conspiracies to attempt to violate the drug laws, it would have so provided in terms less ambiguous than those found in §§ 846 and 963. Congress is as much aware as we are of the venerable maxim that penal statutes are to be strictly construed.

the entry of voluntary and intelligent guilty pleas] is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim.

We . . . hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.

423 U.S. at 62–63 n. 2, 96 S.Ct. at 242 n. 2 (emphasis in original).

The objection that the indictment fails to charge an offense is not waived by a guilty plea. The violation of Meacham's right to be free of prosecution for a nonoffense would bar his conviction even if his "factual guilt" had been established validly. The entry of a guilty plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense. *United States v. Di Fonzo*, 603 F.2d 1260 (7th Cir. 1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980); *United States v. Broncheau*, 597 F.2d 1260 (9th Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). Meacham's guilty plea does not bar reversal of his conviction. *See Launius v. United States*, 575 F.2d 770 (9th Cir. 1978); *United States v. Macklin*, 523 F.2d 193 (2d Cir. 1975).

The appellants raise several other issues on appeal. Although the foregoing disposes of these appeals, we believe we should address three of the remaining issues in the event of re-indictment.

### Severance—Cross Examination

Ward claims that the district court's refusal to allow him to cross-examine a government witness about certain recorded telephone conversations deprived him of his Sixth Amendment right to confront the witnesses. Ward, a Fort Lauderdale, Florida, policeman during the life of the conspiracy, claimed that he had been working undercover—albeit without the approval of his department—against the other defendants and that therefore he did not have the criminal intent required. He testified that he had been in contact during the conspiracy with Special Agent David Hoyt of the DEA's Hartford, Connecticut, office. Ward had met Hoyt while working on another case, and he claimed at trial that he had kept Hoyt posted on the activities of the other defendants in this case. In rebuttal, Hoyt testified that he had spoken on the telephone with Ward three times between September 21 and October 10, 1978, but that Ward had reported nothing with respect to this case.

Ward was not among those arrested at the Newborn airstrip on October 10. He kept in touch with Hoyt after the arrests. His first post-October 10 call to Hoyt was on October 17, and Hoyt, who by then had been told by other DEA agents that Ward was a suspect in a drug conspiracy, tape-recorded the call. This was the first of Ward's calls that Hoyt recorded. Hoyt recorded four others between October 17 and November 30, 1978.

 The district court prevented the attempts by Ward's attorney to cross-examine Hoyt about the recorded calls because certain statements made during the calls implicated the other defendants. As hearsay, those statements were not admissible at the trial of the other defendants.[8] After

---

**8.** The district court held that, because the arrests on October 10 had put an end to the conspiracy, the statements, all of which were made after October 10, were not admissions "by a conspirator or a party during the course and in furtherance of the conspiracy," which admissions are made admissible against the "party" by Fed.R.Evid. 801(d)(2)(E). Ward

the ruling, Ward's attorney asked the district court to either allow him to refer to the statements without mentioning the names of the other defendants or to sever Ward's prosecution so that the hearsay problem would be avoided. The district court rejected both alternatives.

■ Ward claims that, had his lawyer been permitted to cross-examine Hoyt with respect to the recorded calls, he would have been able to show the jury several inconsistencies between Hoyt's testimony and inferences that fairly can be drawn from the calls. We have reviewed the testimony of Ward and Hoyt and the transcripts of the recorded calls, and we find merit in Ward's claim. During rebuttal, Hoyt denied that Ward had spoken before October 17 about his relationship with some of the conspirators and about certain critical events in the conspiracy. The transcripts of the recorded telephone calls raise substantial questions concerning the accuracy of that testimony. Several times during the calls, Hoyt revealed an awareness of people and events about which he later claimed Ward had not told him. Further, during the first call made after Ward's arrest, Hoyt told Ward that, as a result of the DEA's acquisition of Ward's telephone records showing that Ward had made several calls to Hoyt, the DEA was investigating Hoyt in connection with the conspiracy. The jury should have had the advantage of evaluating this evidence so that it properly could have performed one of its most important tasks—evaluating the credibility of witnesses.

It is possible that Hoyt has reasonable answers to the questions presented by the transcripts of the recorded conversations. That reasonableness *vel non* was for the jury to weigh and decide. The district court should have allowed Ward's lawyer to cross-examine Hoyt with respect to the recorded conversations.

Where an error in refusing to allow a defendant to cross-examine a witness has a great adverse effect on the defense, the error may not be considered harmless. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (refusal on grounds that government witness was a minor to allow cross-examination concerning fact that he was on probation for juvenile offense); *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (refusal to allow defendant to ask government witness his correct name and address). We conclude that the refusal to allow Ward to cross-examine Hoyt with respect to the recorded calls potentially had a great adverse effect on his defense and that therefore the error cannot be considered harmless.

■ The only remaining question with respect to this issue is whether the district court should have severed Ward's prosecution or whether it merely should have permitted Ward to refer to the statements made during the recorded conversations without mentioning the names of the other defendants. For two reasons, the former

---

challenges this holding on appeal, claiming that, because only some of the conspirators were arrested on October 10, the conspiracy continued after that date. In support of his argument, Ward cites *United States v. Grubb,* 527 F.2d 1107 (4th Cir. 1975), in which the court held that the admissions of coconspirators made after the arrests of other coconspirators were admissible against an unarrested defendant who had continued his criminal conduct after the arrests.

The conspiracy here, unlike that in *Grubb,* was wiped out by the arrests. The evidence introduced at trial showed that the defendants' criminal activities ended on October 10. Therefore, the general rule that the arrest of coconspirators puts an end to the conspiracy applies, and Ward's statements incriminating the other defendants were not admissible at

their trial. *See United States v. Postal,* 589 F.2d 862 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979); *United States v. Caro,* 569 F.2d 411 (5th Cir. 1978); *United States v. DiRodio,* 565 F.2d 573 (9th Cir. 1977). Furthermore, because Ward's statements during the recorded telephone calls were made not "in furtherance of the conspiracy" but rather either to assist in bringing the conspirators to justice (as Ward would have it) or to "cover" Ward by providing him with a bogus defense in the event of prosecution (as the government would have it), the statements were not admissible under Fed.R.Evid. 803(d)(2)(E). *See United States v. Green,* 600 F.2d 154 (8th Cir. 1979); *United States v. Eubanks,* 591 F.2d 513 (9th Cir. 1979); *United States v. Lang,* 589 F.2d 92 (2d Cir. 1978).

course would have been more prudent. First, from Ward's point of view, much of the value of the recorded conversations derives from the fact that the names of particular defendants were mentioned. To deprive Ward of the right to reveal these names very likely would be to violate his right effectively to cross-examine the witnesses against him. Second, from the other defendants' point of view, revelation to a jury of the contents of the conversations even without actual mention of the names involved would cause too great a likelihood of improper speculation. Under these circumstances, the prosecution of Ward should have been severed from that of the other defendants.

### Outrageous Conduct

 The final issue we address involves the claim of Hayes and Gilroy[9] that the conduct of the government agents who investigated the conspiracy was so "outrageous" that the prosecution should have been dismissed.[10] The appellants' argument is based on language in Mr. Justice Powell's concurring opinion in *Hampton v. United States*, 425 U.S. 484, 491–95, 96 S.Ct. 1646, 1650–53, 48 L.Ed.2d 113 (1976), indicating that "outrageous" conduct by government agents investigating a case may warrant dismissal of the prosecution. Hayes and Gilroy claim that the government agents investigating this case acted outrageously. Specifically, they point to the actions of Paul and his copilot in flying an unairworthy plane over portions of the southern United States, endangering the lives of the people living there.

The actions of Paul and the copilot in this case were not the sort of outrageous conduct Mr. Justice Powell had in mind in his *Hampton* opinion. The outrageousness "de-

fense" to a prosecution is based on the Due Process Clause of the Constitution. *Hampton*, 425 U.S. at 493, 96 S.Ct. at 1651–52 (Powell, J., concurring). Due process rights are personal rights that may be asserted only by those whose rights allegedly have been violated. Therefore, Hayes and Gilroy may not raise the rights of the denizens of the southern United States in order to bar their own prosecution.

The guilty plea of Meacham is VACATED and his conviction, is REVERSED.

The convictions of Ward, Gilroy, Hayes and Metsger are REVERSED.

---

9. Because we find no merit in this claim, we will not discuss the effect of Gilroy's failure to raise it in the district court. *See* n. 3, *supra*.

10. The appellants realize that the defense of entrapment is not available to one who was predisposed to commit the crime with which he is charged. *See Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Hayes admitted in his posttrial motion raising

the outrageous-conduct issue that he had been predisposed to participate in the conspiracy. Gilroy never has taken a position on whether he was predisposed. Should the appellants be able to prove on retrial that they were not predisposed to commit the crime with which they are charged, they may be able to establish a valid entrapment defense.