LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence to imprisonment for five years on a plea of guilty to an indictment that charged in pertinent part that defendant:
“... Did unlawfully possess, Methylene-dioxy Amphetamine, a controlled substance contrary to and in violation of the provisions of the Alabama Uniform Controlled Substances Act, in violation of Title 20-2-70 of the Code of Alabama.”
Neither the transcript of the record proper nor the transcript of the proceedings is lengthy, but, within less than ten days after the rendition of the judgment of conviction and sentence and while the defendant was confined in the Baldwin County Jail, defendant gave notice of appeal and soon thereafter filed pro se in the office of the Clerk of the Circuit Court of Baldwin County some variously captioned motions or requests in pen and ink handwriting of about forty pages, which contained much material that is either superfluous or irrelevant and immaterial to a correct determination of the merits of this appeal. The defamatory nature of some of it makes it inappropriate for us to discuss it other than as we will do in the further course of this opinion.
There was considerable delay in the arrivT al in this Court of the transcript of the proceedings. Upon arrival of what purportedly was the complete record, including the transcript of the proceedings, it was soon discovered that there had been omitted therefrom an executed Ireland form (Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971)) and on motion of appellee, the record of the trial court was corrected so as to include the executed Ireland form.
We are now informed by the documents that have arrived in this court in this case that defendant-appellant has been displeased with each of the attorneys that have represented him, including his trial *186 attorney and his attorneys on appeal. His trial attorney withdrew as his counsel, and a different attorney was appointed to represent him on appeal, which attorney withdrew as his counsel, and another attorney was appointed to represent him on appeal. His last attorney filed a brief on behalf of appellant, in which he earnestly urged that the judgment of the trial court should be reversed. Said counsel also requested the privilege of making an oral argument, which request was granted by this court. However, the brief of counsel for appellant was filed before the record in the case had been corrected as above stated. On January 24,1983, appellant filed a pro se request “to remove court appointed attorney from the above-styled case,” and on January 27, 1983, his attorney filed a motion for leave to withdraw as counsel, which motion was promptly granted by this court, and the case was submitted on briefs on January 27, 1983.
During the latter part of 1982 and continuing through January 24, 1983, this court was deluged by correspondence, some in the form of requests and motions, from appellant in pen and ink handwriting and written by him while serving the sentence imposed on him in this case, which correspondence has all been answered by the Clerk of this Court, in accordance with her habitual courtesy, and appellant was advised thereby that his correspondence would be considered by the court as pro se briefs in his behalf, and this court is hereby complying with such assurance.
Included in the copious correspondence from appellant, is lengthy reference made by him to what he refers to as another appeal from the Circuit Court of Baldwin County “in regards to the Circuit Court’s denial to reduce an excessive appeal bond.” This correspondence addressed to the Presiding Judge of the Court of Criminal Appeals was also promptly answered by the Clerk, by which appellant was advised that this court had not received any record whatever from the trial court as to the other case.
Our review of all the documents now before us convinces us that none of the correspondence of appellant justifies a reversal of the judgment of the trial court. Although we take into consideration pro se argument on behalf of appellant, as well as argument of his counsel, it is not proper for us to consider, or to pass upon the merits of, any of his factual aspersions not supported by the record proper or the transcript of the proceedings. We now turn to a consideration of legal questions presented in brief of counsel for appellant and counsel for appel-lee.
There would have been considerable merit in the argument of appellant’s then counsel that, in the absence of the Ireland form at that time from the record on appeal, the record failed to show that the defendant was advised of his constitutional rights essential to the valid acceptance of a defendant’s guilty plea, as set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and other cases, including Dingier v. State, Ala. 408 So.2d 530 (1981), cited in the brief of counsel for appellant, but the merit of such argument was discontinued by the subsequent supplemental record that included the completed “Ireland form,” signed by the trial judge, the defendant’s attorney and the defendant himself. It should be noted that in Dingier, supra, there was no “Ireland form.”
It is also stated in the brief of counsel for appellant that “a guilty plea cannot be voluntary if the Defendant is not informed of the elements of the crime with which he is charged. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).” The first sentence in the majority opinion in Henderson v. Morgan is as follows: “The question presented is whether a defendant may enter a plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of the victim was an element of the offense.” There are many crimes as to which the opinion in the cited case would be inap-posite, as it is to the instant case, we think. Furthermore, in the cited case, the extraordinarily low mentality of the defendant was *187 emphasized as a material factor, while, in the instant case, there is an entire absence of any indication of any subnormality of mind of defendant. On the contrary, as demonstrated by his extensive correspondence, he is mentally alert and intelligent, even though the exercise of good judgment by him in proceeding at cross-purposes with his legal counsel may be questionable.[1]
In another contention in the brief of counsel for appellant, he says:
“... The procedure followed by the Court is directly contrary to that suggested in Cooper v. State, 53 Ala.App. 36, 297 So.2d 169 (1973), in which all inquiries are made before the plea is accepted. The record in this case demonstrates a colloquy which falls far short of Cooper’s suggested inquiries and certainly does not lay a foundation to establish that the Defendant had a full understanding of the nature of charges against him, what a plea of guilty connotes and its consequences.”
This contention is not without some basis, which is to be found in the fact that prior to the conclusion of “all inquiries” by the trial court of the defendant, the trial court stated:
“Alright [sic]. The Court finds that the Defendant knowingly, willingly, intelligently, enters a plea of guilty to Possession of Controlled Substances as a felony. The Court accepts the plea. Tell me what you did, Don?”
It would have been better if the trial court had not made the announcement last quoted, particularly, that “The Court accepts the plea” until the trial court had finished asking a large number of questions, which defendant answered, prior to the court’s announcing “Based on what you have told me I find you guilty of possession of Controlled Substances as a felony....” Nevertheless, we are convinced that, although the announcement by the trial court of its acceptance of the plea of guilty was premature, the trial court did not actually accept the plea until after all questions had been asked the defendant by the court and defendant had answered all of such questions.
In his brief, appellant’s counsel says the record “does not establish or reflect a factual basis from which the trial judge could have determined that the guilty plea was knowingly and voluntarily entered by the accused.” He refers to some of the colloquy between the trial judge and defendant immediately after that which we have last quoted above. We continue to quote the colloquy, all of it that pertains to the inquiry that was commenced by the trial judge, when he asked the defendant, “Tell me what you did, Don?”
“THE DEFENDANT: Sir?
“THE COURT: What did you do? What did you do to get charged with this crime?
“THE DEFENDANT: I had some drugs that they found, M.D.A.
“THE COURT: How much did you have?
“THE DEFENDANT: I’m not exactly sure of the weight. It was about that much powder in the bottom of a bag.
“THE COURT: Where did you get it?
“MR. FRIEDLANDER: [Defendant’s attorney]: Your Honor, part of our discussion, and part of the recommendation by the District Attorney’s Office is based on the fact that Mr. Smith did not wish to inform on anyone. He told them the general area which was out of the state of Alabama and was in Atlanta, and did not wish to go any further in that matter.
“THE COURT: Alright [sic]. Am I to understand that you don’t want to reveal the source of this stuff, Mr. Smith?
“THE DEFENDANT: Yes sir.
“THE COURT: Alright. What were you going to do with it? Use it yourself? “THE DEFENDANT: Yes sir.
“THE COURT: How do you use this material?
*188 “THE DEFENDANT: You can either ID[2] — it or inhale it through your nose.
“THE COURT: What is its effect?
“THE DEFENDANT: It has the sort of numbing effect and — it’s hard to describe.
“THE COURT: Alright. Based on what you have told me I find you guilty of Possession of Controlled Substances as a felony. Do you have any recommendation as to a sentence?
“MR. NORTON [District Attorney]: We do. Five years to serve.
“THE COURT: Do you have any response?
“MR. FRIEDLANDER: That was the correct plea bargaining negotiations, Your Honor.”
Although the part of the colloquy just quoted is not commendably strong in reflecting “a factual basis from which the trial judge could have determined that the guilty plea was knowingly and voluntarily entered” by the defendant, we think it was sufficient, when considered with all of the other circumstances shown by the transcript, including the meeting of the minds of the trial judge, the defendant and defendant’s counsel as reflected by the completed “Ireland form.” That defendant used what purports to be the semblance of an abbreviation for the specific controlled substance that he was charged with possessing, that all concerned, including himself, seemed satisfied with the term used by him and that his familiarity with the particular substance is indicated by his description of the methods and effects of its use, leave little room for doubt that it was one of the controlled substances listed in Schedule I of Code of Alabama 1975, § 20-2-23(3), proscribed as follows:
“Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation:
“a. 3, 4, — Methylenedioxy amphetamine;
“b. 5-methoxy-3, 4-methylenedioxy amphetamine; ...
“g. 4-methyl-2, 5-dimethoxyampheta-mine;

As a final contention, counsel for appellant in his brief urges that “... a guilty plea does not waive the jurisdictional defect of an indictment that fails to charge an offense. United States v. Meacham, 626 F.2d 503 (5th Cir.1980).” In United States v. Meacham, the United States Court of Appeals for the Fifth Circuit dealt extensively with a plethora of issues, including contentions that the indictment was insufficient. In reliance upon Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), it was held in Meacham, supra, at 626 F.2d 507:
“Here, as in Russell, the indictment clearly satisfies the second Russell requirement. The appellants should have no difficulty knowing to what extent the indictment protects them from being put in double jeopardy. The indictment also satisfies the second half of the first Russell requirement, i.e., that the defendants be apprised of what they are to be prepared to meet. Because, however, the elements listed in the indictment failed to state an offense against the United States, the indictment was insufficient and should have been dismissed.”
We are in complete harmony with Russell and Meacham in holding, as we do, that the indictment in the instant case fully apprised defendant of what he was called upon to defend himself against and that the indictment expressly charged defendant with the unlawful possession of a specific “controlled substance contrary to and in violation of the provisions of the Alabama Uniform Controlled Substances Act, in violation of Title 20-2-70 of the Code of Alabama.”
Perhaps it should be noted that in none of the correspondence that we have had an opportunity to consider as pro se argument *189 on behalf of appellant does appellant seek a reversal on the grounds that have been set forth in the brief of his attorney with commendable zeal and dedication to his duty.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.

. There was plea bargaining in the case, as to which the statutory punishment by imprisonment is for “not less than two nor more than 15 years” (Code of Ala.1975 § 20-2-70(a)), and, according to recent correspondence between appellant and one of his attorneys, he will soon be eligible for parole.

. Did he actually say “ID” or “IV”?