803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee
v.
ROBERT RICHIE (85-1452), BOBBY C. NEELY (85-1453), HAROLD
ALLEN (85-1454), Defendants-Appellants.
 No. 85-1452.
No. 85-1454.
 No. 85-1453.
 United States Court of Appeals, Sixth Circuit.
 Sept. 2, 1986.
 
 Before: MERRITT and MARTIN, Circuit Judge; and WEBER, District Judge*
 MERRITT, Circuit Judge.
 
 
 1
 Although the defendants in this drug case raise several issues on appeal, only two are significant: whether the indictment contained prejudicial language that allowed defendants to be convicted of "conspiracy to attempt" rather than to commit a crime, and whether the Government adequately made out a case of one single conspiracy in which all the defendants participated, rather than merely a series of isolated drug deals among individuals who happened to be acquainted.
 
 
 2
 The defendants' argument on the language of the conspiracy count is that the charge in Count 1 of the indictment permitted them to be convicted of an act that was not a crime by charging that they conspired,
 
 
 3
 to commit an offense against the United States, that is, the attempt to possess with intent to distribute, to possess with intent to distribute, and to distribute various quantities of heroin . . . in violation of Sections 841(a)(1) and 846 of Title 21, United States Code (emphasis added).
 
 
 4
 Section 846 criminalizes both "conspiracy to possess" and "attempts to possess" but not a "conspiracy to attempt." Thus the underlined language above is an error and does not charge a crime.
 
 
 5
 Defendants rely on United States v. Meacham, 626 F.2d 503 (5th Cir. 1980). In that case, the Fifth Circuit held that Congress did not intend to make conspiring to attempt a crime and that an indictment charging conspiracy is insufficient. It concluded that the insufficiency could be raised on appeal even if it had not been raised below because "the right to be free from prosecution under an indictment that fails to charge an offense is a substantial right." 626 F.2d at 509.
 
 
 6
 In Meacham, the sole charge, explicitly stated in the indictment, was that the suspects conspired to attempt the violation of narcotics laws. Here, on the other hand, the defendants were clearly charged with both conspiracy to violate the laws and with conspiracy to attempt such violation. In Meacham the conspiracy count did not charge a crime. Here it does charge a crime but it contains extraneous language not pertinent to the crime charged. The issue was not raised below and is raised for the first time on appeal. Since the defendants are unable to show jury confusion or other harm as a result of the extraneous language, we see no point in permitting the issue to be raised for the first time on appeal. Defendants waived their objection to the indictment by not raising the issue in the trial court.
 
 
 7
 The second issue of substance is whether the government charged and proved that the defendants were members of one conspiracy to possess and distribute heroin, rather than simply isolated dealers who knew each other.[1] The evidence presented at trial clearly showed that all three worked with Garrett in purchasing heroin from a Chicago source and reselling it in Detroit, with various forms of assistance, guarantees, and credit being made available among the three as part of its cooperative endeavor.
 
 
 8
 The government's theory at trial was that the defendants were part of a "hub and spoke" or "wheel" conspiracy in which a dead unindicted coconspirator, Kenneth Garrett, was the central figure. Mr. Garrett appears to have been murdered in the interval between the conspiracy's termination and the indictments. The government introduced evidence about Garrett's heroin business gathered by Charles Acker, an informant for the FBI who often wore a concealed tape recorder. Garrett referred Acker to Robert Richie, Bobby Neely and Peck Allen as sources of heroin and information about sources. Acker was outfitted with a "wire" and met with Neely at a bar in Detroit, where the two arranged the sale of one-quarter ounce of heroin for $2500. Acker again wore a wire, this time to a meeting with Robert Richie, in which his dealings with Neely were discussed.
 
 
 9
 A few days later, Acker had a conversation with Garrett about travelling to Chicago to purchase heroin; the two made plans to travel there with Garrett acting as middle-man between Acker and the Chicago heroin source, a deal that Garrett said he also had with "Peck" Allen. Later on, however, Garrett told Acker that he would be sending Robert Richie in his (Garrett's place), and said that any questions about the trip should be addressed to Allen.
 
 
 10
 On October 3, 1983, Acker and Allen discovered Garrett's Chicago heroin source: Allen admitted having made trips to do business with the source himself. On the same day, Acker had a conversation with Robert Richie, in which they discussed Allen's trips to Chicago and the money that could be made. Viewing the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60 (1942), there was a sufficient link among the defendants to support a conviction for a conspiracy by Richie, Neely and Allen to import drugs from a Chicago source through Garrett and to assist each other in the process.
 
 
 11
 There are several other claims, all of which are without merit. Richie and Neely claim that they were denied a fair trial when their "impeachment" evidence -- testimony that Acker, the FBI informant, was selling drugs while working for the government -- was excluded under the "extrinsic evidence" provision of Fed. R. Evid. 608(b). The purpose of that rule, which forbids the introduction of evidence concerning a witness's conduct (other than conviction of crime) is to prevent "mini-trials on issues of tangential importance." If the rule means anything, it applies in this case -- indeed defendants never offered any convincing or well-defined reason for introducing the testimony.
 
 
 12
 Another complaint is that it was error to refuse severance of defendants Richie and Neely from defendant Allen, because of his "antagonistic defense." Neither the record nor the comments at argument suggest that Allen's defense was especially antagonistic. The issue of severance is a matter of discretion with the trial judge, and will be overturned only for abuse of discretion. United States v. Dempsey, supra; United States v. Branan, 457 F.2d 1062 (6th Cir. 1972). No such abuse occurred.
 
 
 13
 Lastly, Richie and Neely argue that the tapes of conversations recorded by Acker were improperly admitted because a proper foundation was never laid at trial. However, no objection to the foundation was made prior to appeal, and there was no plain error in the tapes' admission. The questions asked of Acker were adequate to establish the authenticity of the recordings, and in the absence of a timely objection at trial we will not hear complaints about the foundation at this late date. This Court having rejected defendants' key arguments, and having found the rest meritless, the convictions are affirmed and the appeal dismissed.
 
 
 
 *
 The Honorable Herman J. Weber, Judge of the United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 In deciding this, we address both the "no single conspiracy" argument offered by Richie and Neely, and Mr. Allen's argument that the evidence did not link him to Garrett, Richie and Neely