STATE of Wisconsin,
Plaintiff-Respondent,

v.

Neil P. JACKSON,
Defendant-Appellant.†

Court of Appeals

*No. 04–1603–CR. Submitted on briefs February 8, 2005.
—Decided March 15, 2005.*

**2005 WI App 104**

(Also reported in 701 N.W.2d 42.)

† Petition to review denied 7-28-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Attorney Timothy A. Provis*, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *David J. Becker*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Neil P. Jackson appeals from a judgment entered on the jury's verdict finding him guilty of attempted armed robbery, with the threat of force, as a party to the crime, *see* WIS. STAT. §§ 943.32(2),

939.32, 939.05, and from the trial court's order denying his motion for postconviction relief. He claims that the trial court's instruction to the jury on Wisconsin's party-to-a-crime law on criminal culpability violated his right to due process. We affirm.

## I.

¶ 2. Neil P. Jackson was charged, as a party to a crime, with attempting to rob Dymaris Dejesus after two alleged co-conspirators, Roosevelt Robinson and Vincent Harris, told the police that Jackson was involved. At Jackson's trial, Dejesus testified that when she got home from a date with Robinson, she parked her car, went through the screen door to the house, and opened the inside door. She told the jury that when she turned around to close the screen door, a man tried to get into the house. After a struggle with the man, she was able to shut the inside door, and lock it. She testified that she then heard someone kick the door, and three or four gunshots. Dejesus told the jury that she did not recognize the man, and that Robinson later called her to apologize for his role in the attack.

¶ 3. Although Robinson, who pled guilty to the attempted armed robbery, testified as part of the State's case against Jackson, he denied that Jackson was involved, claiming that he had earlier implicated Jackson because he, Robinson, was angry at Jackson. The trial court let the State read to the jury what Robinson had earlier told the police. *See* WIS. STAT. RULE 908.01(4)(a)1 (prior inconsistent statement of witness not hearsay). In those pre-trial statements, Robinson claimed that Jackson, his cousin, wanted to rob Dejesus's father because Jackson thought Dejesus's father was a drug dealer. According to Robinson's

pre-trial statements to the police, Jackson told Robinson that he would give Robinson part of the money if Robinson would tell him when Dymaris Dejesus was leaving Robinson's house. Robinson also told the police that the plan was for Jackson and a "T-Mack" to wait outside the Dejesus house. When Dymaris Dejesus got home, Jackson and "T-Mack" were going to hold a gun to her head, take her inside the house, and force her father to give them money and drugs. Robinson also told the police in his pre-trial statements that he went out with Dymaris Dejesus that night, and that Jackson called Robinson several times to see if Dymaris Dejesus was still with him. When Jackson called at 2:30 a.m., Robinson told him that Dymaris Dejesus had just left.

¶ 4. Harris also testified and, as with Robinson, the State was allowed to use Harris's pre-trial statements to the police as evidence because Harris told the jury he had falsely accused Jackson of being involved in the attempted armed robbery because he was angry at Jackson. In those pre-trial statements, Harris said that Jackson came up with a plan to rob Dymaris Dejesus's father because "[h]e's a big time drug dealer." According to Harris's statements, Jackson and several others drove to the Dejesus house, and when they got there, he, Jackson, and a "Bay Ray" walked up to the house, and Jackson tried to open the door using keys that Robinson had given him. The keys did not work, however, and they ran away when they saw a light in the house go off. Harris told the police that he went back to the house after Jackson berated him, and that when he, Harris, heard two gunshots, he drove off.

¶ 5. Over Jackson's objection, the trial court instructed the jury on the conspiracy aspect of Wisconsin's law on party-to-a-crime complicity:

A person is a member of a conspiracy if, with the intent that a crime be committed that, the person agrees with or joins with another for the purpose of committing that crime. A conspiracy is a mutual understanding to accomplish some common criminal objective or to work together for a common criminal purpose. It is not necessary that the conspirators had any express or normal agreement or that they had a meeting or even that they knew each other or even that they all knew each other.

If a person is a member of a conspiracy to commit a crime and that crime is committed by any member of the conspiracy, then that person and all members of the conspiracy are guilty of that crime.

*See* WIS. STAT. § 939.05(2)(c); WIS JI—CRIMINAL 410. The trial court also instructed the jury on, among other things, the aiding-and-abetting theory of party-to-a-crime liability, attempt, and armed robbery.

## II.

¶ 6. Whether jury instructions violate due process is a question of law that we review *de novo*. *State v. Pettit*, 171 Wis. 2d 627, 639, 492 N.W.2d 633, 639 (Ct. App. 1992). As we have explained:

Relief is not warranted unless the appellate court is "persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury" in the manner asserted by the challenger. Where a criminal defendant claims that the jury instructions violated constitutional due process, the issue is whether there is a reasonable likelihood that the jury applied the instruction in a way that violates the defendant's rights. In making that assessment, we consider the challenged portion of the instructions in context with all other instructions provided by the trial court.

*State v. Foster*, 191 Wis. 2d 14, 28, 528 N.W.2d 22, 28 (Ct. App. 1995) (citations and quoted source omitted).

¶ 7. Jackson alleges that the jury instruction on conspiracy violated his right to due process because, he contends, "conspiracy to attempt" is a nonexistent crime. Jackson relies on *United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980), and *People v. Iniguez*, 116 Cal. Rptr. 2d 634 (Cal. Ct. App. 2002). These cases are inapposite.

¶ 8. In *Meacham*, the defendants were charged with "conspiracy to attempt to import marijuana" and "conspiracy to attempt to distribute marijuana" under 21 U.S.C. §§ 846 and 963.[1] *Meacham*, 626 F.2d at 507–508. Although *Meacham* did not decide "whether the government may prosecute the conceptually bizarre crime of conspiracy to attempt in instances where separate provisions make both the conspiracy and the attempt criminal offenses," it "note[d]" that, "*it would be the height of absurdity to conspire to commit an attempt, an inchoate offense, and simultaneously conspire to fail at the effort.*" *Id.*, 626 F.2d at 509, 509 n.7 (emphasis added). Jackson relies on this language.

¶ 9. In *Iniguez*, the defendant pled guilty to " 'conspiracy to commit attempted murder.' " *Iniguez*, 116 Cal. Rptr. 2d at 635. *Iniguez* determined that " 'conspiracy to commit attempted murder' " was a nonexistent crime:

[1] 21 U.S.C. § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 963 is identical. *See United States v. Meacham*, 626 F.2d 503, 506 (5th Cir. 1980).

The conduct defendant pleaded to, conspiracy to commit attempted murder, is a conclusive legal falsehood. This is because the crime of attempted murder requires a specific intent to actually commit the murder, while the agreement underlying the conspiracy pleaded to contemplated no more than an ineffectual act. *No one can simultaneously intend to do and not to do the same act,* here the actual commission of a murder. Defendant has pleaded to a nonexistent offense.

*Id.,* 116 Cal. Rptr. 2d at 636–637 (emphasis added; footnote omitted). Jackson relies on this language as well.

¶ 10. Jackson asserts that these cases show that attempt cannot be the object of a "conspiracy" because, under Wisconsin law, conspiracy requires specific "intent that a crime be committed," *see* WIS. STAT. § 939.31, while attempt, by definition, is an incomplete crime, *see* WIS. STAT. § 939.32(3).[2] Jackson, however, was not charged with "conspiracy to attempt" armed robbery

---

[2] WISCONSIN STAT. § 939.31 provides:

**Conspiracy.** Except as provided in ss. 940.43 (4), 940.45 (4) and 961.41 (1x), whoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties to the conspiracy does an act to effect its object, be fined or imprisoned or both not to exceed the maximum provided for the completed crime; except that for a conspiracy to commit a crime for which the penalty is life imprisonment, the actor is guilty of a Class B felony.

WISCONSIN STAT. § 939.32(3) provides:

REQUIREMENTS. An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

under § 939.31. Rather, he was charged with attempted armed robbery, as a party to the crime, under WIS. STAT. § 939.05.[3] As explained in *State v. Nutley*, 24 Wis. 2d 527, 129 N.W.2d 155 (1964), *overruled on other grounds, State v. Stevens*, 26 Wis. 2d 451, 132 N.W.2d 502 (1965), there is a distinction between conspiracy as a substantive inchoate crime under § 939.31, and conspiracy as a theory of prosecution for a substantive crime under § 939.05(2)(c), and this distinction is significant here.

¶ 11. In *Nutley*, two of the three defendants were charged with conspiracy to commit attempted murder in connection with the shooting of a police officer, who, unlike another officer shot during the confrontation, did not die. *Nutley*, 24 Wis. 2d at 559–560, 129 N.W.2d at

[3] WISCONSIN STAT. § 939.05 provides:

**Parties to crime. (1)** Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

**(2)** A person is concerned in the commission of the crime if the person:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his or her mind and no longer desires that the crime be committed and notifies the other parties concerned of his or her withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

169. Although only the third co-defendant did the shooting, *Nutley* recognized that "the jury could reasonably predicate [the two non-shooters'] liability upon the conspiracy theory of sec. 939.05(2)(c), Stats." *Nutley*, 24 Wis. 2d at 559, 129 N.W.2d at 169. The two non-shooters also tried to interpose the straight conspiracy statute, WIS. STAT. § 939.31, to argue that their sentences were excessive because, as each of them contended, if his criminal liability were "predicated upon his role as a conspirator [under § 939.31], then his life sentence is excessive as a matter of law." *Nutley*, 24 Wis. 2d at 560–561, 129 N.W.2d at 169. In rejecting that contention, which is similar to Jackson's argument here, *Nutley* recognized the distinction between liability founded on the straight conspiracy statute, § 939.31, and conspiracy as an avenue to party-to-a-crime liability under § 939.05(2)(c):

> [The non-shooters'] argument ignores the distinction between conspiracy as a substantive *inchoate* crime, and conspiracy as a theory of prosecution as a principal for a substantive *consummated* crime. If the defendants had agreed to kill the officers, and did only one thing to carry out this plan but short of shooting to kill or to attempt to kill, they could have been convicted under the terms of sec. 939.31 of a conspiracy to commit murder and the sentencing provisions of this statute would have been relevant. Here, they were convicted of a substantive crime, in part, at least, on the theory that they were conspirators and hence were guilty, as principals, of the crimes charged.

*Id.*, 24 Wis. 2d at 561, 129 N.W.2d at 170 (footnote omitted; emphasis by *Nutley*); *see also State v. Sample*, 215 Wis. 2d 487, 505, 573 N.W.2d 187, 195 (1998) (section 939.05 "forms a separate basis for criminal liability, distinct from that for the inchoate crime of conspiracy").

¶ 12. As we have seen, Jackson was charged with and convicted of the substantive crime of attempted armed robbery as a party to *that* crime. That "conspiracy" was the party-to-a-crime avenue by which his criminal liability attached, *see Holland v. State*, 91 Wis. 2d 134, 143, 280 N.W.2d 288, 292–293 (1979) (party-to-a-crime statute establishes "alternative means or ways" that a crime can be committed), does not make him guilty of a non-existent crime. Armed robbery is a crime. Attempted armed robbery is a crime. Under the evidence looked at in a light most favorable to the jury's verdict, *see Nutley*, 24 Wis. 2d at 547–548, 129 N.W.2d at 163–164, Jackson set into motion an armed-robbery scenario that culminated in the crime of attempted armed robbery because of the intervention of things beyond his and his accomplices' control. He was thus guilty of the substantive crime of attempted armed robbery as a *principal* by virtue of Wis. Stat. § 939.05(2)(c). *See Nutley*, 24 Wis. 2d at 561, 129 N.W.2d at 170. The trial court did not err in instructing the jury, and did not violate Jackson's right to due process.

*By the Court.*—Judgment and order affirmed.