UNITED STATES of America,
Plaintiff-Appellee,

v.

James Louis WILLOZ, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

James Louis WILLOZ, Defendant-
Appellant.

Nos. 28642, 30037.

United States Court of Appeals,
Fifth Circuit.

Oct. 19, 1971.

Rehearing Denied Nov. 19, 1971.

Russell J. Schonekas, Virgil M. Wheeler, Jr., Sehrt, Boyle, Wheeler & Butler, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., E. D. La., Horace P. Rowley, III, Richard M. Olsen, Asst. U. S. Attys., New Orleans, La., Douglas R. Fortney, Richard D. Ames, Dallas, Tex., Attys., Regional Counsel I. R. S., for plaintiff-appellee.

Before GODBOLD, CLARK and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Defendant-appellant was convicted upon trial by jury for violation of 26 U.S.C. § 7206(1) for willfully making a statement in his tax return which he did not believe to be true and correct. Defendant in his special wagering tax return, hereinafter referred to as Form 11–C, declared that his business addresses were Apartment 153, 3500 Division Street, and 4320 Bissonnet Street, Metairie, Louisiana whereas the indictment charged him with having an additional business address at Suite 106 Courtland Plaza, 3900 Veterans Highway, Metairie, Louisiana.

On or about December 1, 1965, defendant Willoz filed a Form 11–C on which he included an "at large" business address. Since the Internal Revenue Service refused to issue a wagering tax stamp with an "at large" address, Willoz was requested to file a supplemental Form 11–C. Willoz was requested to sign two affidavits, but he declined to sign them until after he had consulted his attorney. Special Agent Perry, however, read the affidavits to defendant, who, at the conclusion of the reading, stated that he understood their contents. Willoz then executed [1] a supplemental Form 11–C, which listed the same two business addresses as his prior Form 11–C, but which did not list an address at 106 Courtland Plaza, 3900 Veterans Highway, Metairie, Louisiana.

The jury found defendant Willoz guilty of failing to report a business address at which he engaged in the business of accepting wagers, a violation of 26 U.S.C. § 4412(a). Defendant's arguments on appeal will be considered in the following four categories:

## I.

## INDICTMENT AND BILL OF PARTICULARS

Defendant argues that when the Government responded to his request for a bill of particulars, by referring only to bets placed at the Tiara Lounge and not at the 106 Courtland Plaza address, it was precluded from introducing evidence of the placing of wagers at that address.

The portion of the request for a bill of particulars, here at issue, is question II(b). That question asks the Government to state: "The place where these wagers were *placed*." (Emphasis added.) In its reply to this question the

---

[1] The record indicates that after the Government presented its case in chief, the defense made a motion for a directed verdict of acquittal, which the district judge properly denied. The defense thereupon rested. Thus, the only testimony as to the voluntariness of Willoz's filing of the supplemental Form 11–C is that of Special Agent Perry. See discussion infra at part III.

Government stated: "Tiara Lounge, 2305 Veterans Highway, Metairie, Louisiana."

 Defendant further asserts that the Government was estopped from demonstrating that wagers were placed or accepted by him at 106 Courtland Plaza. Moreover, he urges that this estoppel is a consequence of the Government's answer to his request as to where wagers were placed and that for these purposes "placed and accepted" are operatively interchangeable, citing United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957). In *Calamaro*, however, the United States Supreme Court was considering the conviction of a "numbers runner" for his failure to possess a wagering excise tax stamp. The Court in substance held that one involved in a "numbers game," who merely transports wagering information or money, is not in the business of accepting wagers. We cannot say the same is true of one operating a "recording center." [2] The Government could properly respond as it did to a question asking where wagers were *"placed."* The question did not request information as to where wagers were accepted. Tax liability under 26 U.S.C. § 4401 et seq., arises from being in the business of "accepting wagers." Urban v. United States, 445 F.2d 641 (5th Cir., 1971). The indictment here charged defendant with failure to state all material information in his application for a wagering excise tax stamp. A written declaration on his application verified that it was made under the penalties of perjury. The indictment was legally sufficient. Sherwin v. United States, 320 F.2d 137 (9th Cir., 1963); cert. den. 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420 (1964). Replies to a bill of particulars do not amend a legally sufficient indictment. Pipkin v. United States, 243 F.2d 491 (5th Cir., 1957); United States v. Critchley, 353 F.2d 358 (3rd Cir., 1965).

 Notwithstanding the niggardly nature of the Government's answers to the bill of particulars, the defendant, through his participation and the Government's answers, were apprised of the nature of the charge against him and the type of evidence which would be used in his prosecution. The function of a bill of particulars is to avoid surprise and prejudice to an accused. United States v. Glaze, 313 F.2d 757 (2nd Cir. 1963); United States v. Neff, 212 F.2d 297 (3rd Cir., 1954). From the record it appears that the defendant was neither surprised nor prejudiced.

## II.

## SUFFICIENCY OF THE EVIDENCE

Defendant appeals, asserting the insufficiency of the evidence. The question of sufficiency of the evidence was properly raised by motions for judgment of acquittal at the close of the evidence and after the verdict. See Rule 29, Fed.R.Crim.P. In reviewing a district court's refusal to direct the judgment of acquittal, this court can reverse a jury verdict of guilty only in the absence of substantial evidence to support it, viewing the evidence in the most favorable light to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); Fitzpatrick v. United States, 410 F.2d 513 (5th Cir., 1969); Henderson v. United States, 425 F.2d 134 (5th Cir., 1970). We must decide whether a reasonable-minded jury could accept the relevant and admissible evidence, considered in the light most favorable to the Government, as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. As otherwise stated, in circumstantial evidence cases, our inquiry is whether the jury might reasonably deduce from the evidence inferences which exclude every reasonable hypothesis but that of guilt. South v. United States, 412 F.2d 697, at 699 (5th Cir., 1969); Montoya v. United States, 402 F.2d 847, at 850 (5th Cir., 1968).

---

2. Defendant concedes, arguendo, that the Courtland Plaza address was a "recording center."

There was evidence from which a jury could properly conclude that defendant was guilty beyond a reasonable doubt. For example, Agent Lanoux testified that when he and Agent Miller raided the 106 Courtland Plaza address, they found a darkened office with ringing telephones and a locked door. On announcing their presence and purpose as Federal Agents seeking to execute a search warrant and receiving no response, they summoned the building superintendent, who unlocked the door from the outside. The door, however, had been chainlocked from the inside. Opening the door to the extent possible, they were able to see defendant Willoz standing behind the door in a room filled with a pall of smoke. Willoz then unlocked the door and identified himself. Agent Lanoux further stated that by the time the agents gained entry, the telephones had been disconnected. Upon reconnecting them, Agent Lanoux answered several calls. He testified:

"Well, generally when I answered, the caller would ask for 'Jim' or 'Jimmy', and usually when I would say something, the caller would hang up.

"On one occasion, however, I answered a call, and it was a male caller, and he asked what I would give in the fifth, sixth, seventh and eighth races, and I said Jimmy wasn't there at the moment, and he said he would call back."

Upon careful examination of the record we find that the evidence meets the required standard to support the jury's finding of guilt.

### III.

### ADMISSIBILITY OF SUPPLEMENTAL FORM 11–C

Defendant asks whether the trial court improperly denied a motion to suppress as evidence the Form 11–C without a hearing, or, alternatively, whether such document was improperly admitted over the objection that it was not signed freely and voluntarily. During the trial, when the Government sought to introduce this form as its Exhibit 4, an objection, overruled by the court, was made thereto and a motion to suppress on the ground that it was signed under duress was made. Counsel for Willoz asserts that this form was improperly admitted on the ground that it was not freely and voluntarily signed by Willoz, being obtained under duress, coercion and misrepresentation of law, and that to admit this particular Form 11–C is to deny Willoz his asserted Fifth Amendment privilege against self-incrimination. Defendant, by his motion to arrest judgment after the jury had returned its verdict of guilty, preserved this point of error for appeal. See Rule 34, Fed.R.Crim.P. Defendant also raised the same grounds in his motion for a new trial, made within 5 days after verdict. See Rule 33, Fed.R.Crim. P. The trial court overruled both of these motions. However, several cases decided after the trial court's ruling require that this court direct that a hearing be conducted to consider defendant's objection to the introduction of Form 11–C. See Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1967) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1967), as applied in United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969) and United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

The United States Supreme Court, in speaking of the *Marchetti* and *Grosso* decisions in United States v. United States Coin and Currency, *supra,* said:

"The statute commanded that gamblers submit special registration statements and tax returns that contained information which could well incriminate them in many circumstances. Because the risk of self-incrimination was substantial, we held that a Fifth Amendment privilege could be raised as a defense to a criminal prosecution charging failure to file the required forms. * * * "

In *Grosso*, the Supreme Court held:

"Although failures to pay the excise tax and to file a return are separately punishable under 26 U.S.C. § 7203, the two obligations must be considered inseparable for purposes of measuring the hazards of self-incrimination which might stem from payment of the excise tax." 390 U.S. at 65, 88 S. Ct. at 712.

The case at bar, however, is not one in which defendant had been prosecuted for failure to file a Form 11–C. Rather it is a case similar to United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L. Ed.2d 275 (1969), a prosecution for the willful filing of an inaccurate Form 11– C. In *Knox* the Supreme Court upheld a perjury prosecution for filing a false Form 11–C. The Court held that this result obtained notwithstanding that *Knox* had a Fifth Amendment privilege against filing *any* wagering tax return. The Court said that by filing false statements, *Knox* took a course other than the one which § 4412 was designed to compel, a course that the Fifth Amendment gave him no privilege to take. 396 U.S. at 81–82, 90 S.Ct. 363. The Supreme Court, however, recognized that a valid duress defense could be made in such prosecutions to determine whether the false statements were made willfully as required by the statute.[3]

If, upon remand, the district court finds that the supplemental Form 11–C

was the product of duress by Agent Perry rather than a voluntary exercise of the will of the defendant Willoz, then the verdict and consequent judgment must be vacated and the indictment against Willoz dismissed. If the court reaches a contrary determination, the conviction shall stand affirmed by this court as entered.

IV.

## No. 30037—NEWLY DISCOVERED EVIDENCE

■ Subsequent to his trial and appeal in No. 28642 discussed above, defendant Willoz filed a motion with the trial court for a new trial on the basis of newly discovered evidence. The denial of this post-trial motion is the subject matter of his separate appeal. No. 30037. The newly discovered evidence which defendant asserts is that a year after his trial Alfonzo Fred Iachino was convicted of three counts of wagering excise tax evasion covering the same period of time as Willoz's, and further that Iachino was convicted on the very same evidence as was adduced at Willoz's trial. However, defendant has not pointed to any fact inconsistently presented in either of the two trials, except for the question of whether Iachino was accepting wagers for Willoz as his agent or vice versa. Counsel for Willoz is mistaken in his assumption that Iachino's status as a principal necessarily

---

3. In *Knox* this question of the validity of a "duress" defense was not considered as the case arose from the district court's granting of Knox's motion to dismiss the indictment on the basis of *Marchetti* and *Grosso*. Under Rule 12(b) (1) of the Fed.R.Crim.P., a trial judge may consider on a motion to dismiss the indictment only those objections that are "capable of determination without the trial of the general issue." The rule indicates that evidentiary questions of this type should not be determined on such a motion. However, in the instant case we are presented with a situation in which such questions were properly the subject of the district court's consideration. When Form 11–C was introduced as the Government's Exhibit G–4, the defense objected on the

ground of duress. The transcript indicates that the following exchange took place between the defense attorney and the court:

"MR. SCHONEKAS:
 If the Court please, I would like to object to G–4.
THE COURT:
 What is G–4?
MR. SCHONEKAS:
 That's the one that was allegedly signed by the defendant on January 13, 1966, and we contend that this one was filed by the defendant under duress, and I would like to make an offer to suppress that document at this time.
THE COURT:
 Overruled."

negates the possibility that Willoz is also a principal. Based on the verdict, the jury apparently did not believe Willoz's contention that he was a mere agent of Iachino. Moreover, his Form 11–C contradicts his contentions since his Form 11–C was answered "yes" to the question of "Are you or will you be engaged in the business of accepting wagers on your own account?" Furthermore, there is nothing inconsistent with the juries' separate findings that with respect to each other Iachino and Willoz were both principals. Evans v. United States, 349 F.2d 653 (5th Cir., 1965).

Accordingly, while we would affirm the district court's ruling in No. 30037 if that point is reached, we must remand No. 28642 for appropriate proceedings in accordance herewith.

Affirmed in part and in part remanded for further proceedings.