**UNITED STATES of America**

v.

**James Louis WILLOZ.**

**Crim. A. No. 31321.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

March 29, 1972.

Gerald J. Gallinghouse, U. S. Atty., by Robert L. Livingston, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff.

Virgil M. Wheeler, Jr., New Orleans, La., for defendant.

CHRISTENBERRY, District Judge

Following a one-count conviction in this court for willfully making and subscribing to a false tax return, Title 26 U.S.C. § 7206(1), defendant Willoz took an appeal to the United States Court of Appeals for the Fifth Circuit. That court affirmed in part and remanded the case for further proceedings. 449 F.2d 1321 (5th Cir. 1971). A recount of the facts and background of this case at the outset is unnecessary.

The Fifth Circuit's remand order directed this court to conduct an evidentiary hearing to determine the circumstances under which Willoz submitted a supplemental special wagering tax return (Form 11–C). As Judge Ingraham stated:

"If upon remand, the district court finds that the supplemental Form 11–C was the product of duress by Agent Perry rather than a voluntary exercise of the will of the defendant Willoz, then the verdict and consequent judgment must be vacated and the indictment against Willoz dismissed. If the court reaches a contrary determination, the conviction shall stand affirmed by this court as entered."

449 F.2d at 1325. Accordingly, a hearing was held on December 22, 1971, and

testimony was received from the defendant Willoz, Agent Naurbon L. Perry, Agent Dominic Palmisano, Agent Charles M. Nugent, and former Agent Edward J. Roussel.

The evidence educed at that hearing convincingly illustrated that the defendant's second Form 11–C, executed on January 13, 1966, was not the fruit of unlawful governmental duress, coercion, or misrepresentation. Willoz, therefore, has no "defense to this prosecution under the traditional doctrine that a person is not criminally responsible for an act committed under duress." United States v. Knox, 396 U.S. 77, 83, 90 S.Ct. 363, 367, 24 L.Ed.2d 275 (1969).

Willoz was summoned to execute a new Form 11–C because, as explained by I.R.S. Agent Perry, it was the policy of the Internal Revenue Service to reject Forms 11–C if the business address of filing gamblers reflected an "at large" place of business. The reason for this policy was ostensibly to enable the Service to keep accurate records for the purpose of assessing the degree and extent of a gambler's business for tax purposes. A more realistic reason for this requirement is no doubt based on the government's interest in possible criminal associations and criminal activities on the part of the registered taxpaying gambler.

Had Willoz refused to execute the new Form 11–C on the ground that the Fifth Amendment's guarantee against self incrimination protected him, then, as we now know from Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968), he would have prevailed. At that time, of course, the Fifth Amendment had not been so construed and defendant argues that in accordance with the holdings of Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), and United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), he had no choice but to acquiesce to the officially sanctioned demand of Agent Perry.

It was Agent Perry's testimony that Willoz voluntarily came to his office on January 13, 1966, although Perry had attempted unsuccessfully two or three times previously to have him appear. Perry testified that he read Willoz certain Service regulations and explained that Service policy did not permit "at large" gambling addresses. He asked Willoz to sign two printed affidavit forms, one pertaining to the wagering excise tax and the other to the wagering occupational tax, but Willoz declined on the basis that he first wanted the forms examined by his attorney. Agent Perry testified that he in no way objected to this procedure. The discussion then moved to the insufficient Form 11–C and, according to Perry's testimony, following the explanation of Service policy, Willoz, without objection, filled out and signed a new Form 11–C. This prosecution and conviction resulted from the false information given in that return. It is Willoz's contention that he did not waive his Fifth Amendment privilege to stand silent and that the second Form 11–C must be suppressed because of governmental coercion. Willoz testified that he also objected to signing the second Form 11–C, but finally did so because " . . . I knew he wasn't going to let me out of that office. He had told me I was going to be charged, so there was only one way I could get out of there, was to sign the thing the way he wanted it signed."

Agent Perry's undisputed testimony, however, is that he urged the defendant to include on the new Form 11–C all of his gambling addresses. Perry stated that Willoz was informed that no wagering tax stamp would be issued for an "at large" address. This, however, was not undue pressure such that when Willoz executed the fraudulent Form 11–C he was no longer acting of his own volition. It was also undisputed that Perry apprised Willoz that the Service knew that the 4320 Bissonet Street address and the Apartment 153, 3500 Division Street address, both in Metairie, Louisiana, were not his sole places of gambling

business. In fact, Willoz was proven to have an additional gambling business address at Suite 106, Courtland Plaza, 3900 Veterans Highway, Metairie, Louisiana, as alleged in the indictment. Failure to include this third business address in the supplemental Form 11–C as required by 26 U.S.C. § 4412(a) (2), resulted in the conviction under 26 U.S.C. § 7206(1).

Willoz's contention is that all of this taken together constitutes duress. It has been argued that the Service policy of rejecting "at large" gambling addresses was not the nationwide Service policy, but was in practice in some parts of the country, including New Orleans. The government maintains that it is immaterial that the policy of rejecting "at large" addresses was tantamount to a local Service regulation. The important point, argues the government, is the good faith of Agent Perry in fairly and openly administering the policy. This court found the evidence proffered to this effect credible and persuasive. If anything, the January 13th conference can be seen as an effort by the Service to allow Willoz to rectify the inaccuracy or, at least, lack of candor in his earlier Form 11–C which was signed on December 1, 1965, and for which he might also have been prosecuted under 26 U.S.C. § 7206(1). The relevance of the government's "at large" address policy is greatly diminished when it is understood that Willoz was apparently violating the statute in the initial Form 11–C also.

Because it is here held that Willoz's action was not unlawfully compelled, relief must be denied. He was not prosecuted on the basis of any self-incriminating information in either of his Forms 11–C, but rather the prosecution is grounded upon a fraudulent course of conduct, the willful submission of a false tax return. Undoubtedly, the pressure to which Willoz was subjected with regard to the Forms 11–C was not the same as that which the ordinary taxpayer faces when filing income tax returns. For this very reason the Fifth Amendment, as interpreted in *Grosso* and *Mar-*

*chetti,* permits a person legally to refuse to submit Forms 11–C. "But when [Willoz] responded to the pressure under which he found himself by communicating false information, this was simply not testimonial compulsion." *Knox, supra,* 396 U.S. at 82, 90 S.Ct. at 366.

The black-letter law in this area, enunciated in Dennis v. United States, 384 U.S. 855, 867, 86 S.Ct. 1840, 1847, 16 L.Ed.2d 973 (1966), and since followed in numerous cases, is as follows:

"The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional."

Although this point would seem to have been more than adequately emphasized by the Fifth Circuit in the instant case, 449 F.2d 1321, 1325 (1971), defendant has vigorously reasserted his Fifth Amendment argument in this proceeding. The argument cannot succeed. *See* Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); United States *ex rel.* Annunziato v. Deegan, 440 F.2d 304, 306 (2d Cir. 1971); Postell v. United States, 429 F.2d 528, 529 (6th Cir. 1970), cert. denied, 401 U.S. 920, 91 S.Ct. 905, 27 L.Ed.2d 822 (1971); Mengarelli v. United States, 426 F.2d 985, 986 (9th Cir. 1970), cert. denied, 400 U.S. 926, 91 S.Ct. 189, 27 L.Ed.2d 186 (1970); United States v. McCarthy, 422 F.2d 160, 162 (2d Cir. 1970).

After careful consideration of the oral testimony and counsels' arguments and memoranda, and for the reasons assigned herein, it is the finding of this court that the execution of the supplemental Form 11–C by defendant Willoz on January 13, 1966, cannot be attribut-

ed to unlawful duress, coercion, or misrepresentation. Accordingly, relief is denied and it is ordered that the mandate of the Court of Appeals which was issued on October 19, 1971, in United States v. Willoz, 449 F.2d 1321, be now put into effect.