**UNITED STATES of America, Plaintiff-Appellant Cross Appellee,**

v.

**Thomas M. HAJECATE and Thomas H. Hajecate, Defendants-Appellees Cross Appellants,**

**Lance Eisenberg, Defendant-Appellee.**

No. 81–2130.

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1982.

Michael E. Tigar, John Privitera, Washington, D. C., for the Hajecates.

Joe H. Reynolds, Houston, Tex., Earl J. Silbert, Martin R. Baach, Washington, D. C., for Eisenberg.

Anna E. Stool, Asst. U. S. Atty., Houston, Tex., Michael L. Paup, Chief, Appellate Sec-

tion, Glenn L. Archer, Jr., Asst. Atty. Gen., Robert E. Lindsay, James A. Bruton, James Springer, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for the U. S.

Before CLARK, Chief Judge, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

In this criminal case, the government appeals the pretrial dismissal of an eleven-count indictment against businessmen Thomas M. ("Mick") Hajecate and Thomas H. ("Tom") Hajecate and their tax attorney, Lance Eisenberg. The defendants Hajecate cross-appeal the district court's denial of their motion to dismiss the indictment based on prosecutorial vindictiveness.

## I. FACTS AND DISPOSITION BELOW.

On January 21, 1981, a grand jury in the Southern District of Texas returned an eleven-count indictment, charging the three defendants with violations of several federal criminal laws.[1] All these violations stemmed from a scheme to conceal the Hajecates' interest in an offshore (Cayman Islands) bank account. As gleaned from the indictments, part and parcel of this scheme were obstruction of IRS tax collection, false statements on income tax returns, failure to report financial transactions between persons in the United States and foreign institutions to the Customs Service, and unreported transfers of money between the United States and the Cayman Islands. We shall give more details on the counts as necessary in our discussion of the issues on appeal. On February 25, 1981, a superseding indictment covering the same scheme and containing the same number of counts was filed.

The defendants sought bills of particulars on the indictment and moved for its dismissal as well. After a March 18, 1981, hearing, the district court dismissed all eleven counts as facially invalid, accepting "the Defendants' theory of law in every respect" except the allegation of prosecutorial vindictiveness.

## II. THE GOVERNMENT'S APPEAL.

### A. Count One.

Count one charged all three defendants with violating the federal criminal conspiracy statute, 18 U.S.C. § 371 (1976). This alleged conspiracy had four objects, all violations of federal law: (1) defrauding the United States by obstructing the IRS in its collection of income taxes; (2) defrauding the United States by obstructing Customs Service maintenance of records of financial transactions between foreign financial institutions and United States citizens; (3) knowingly and willfully making false statements on income tax returns; and (4) failure to report money transferred between the United States and the Cayman Islands. The defendants attacked the indictment's statement of each object as facially invalid, and we address each object in turn.

### Obstruction of the IRS

■ In attacking the first object, the defendants claim that two transactions named as means and methods of furthering the conspiracy, a loan obtained by one of the Hajecates' oil companies and silver straddles engaged in by the Hajecates, are in fact legal transactions. Therefore, since these transactions are equally capable of legal interpretation, the indictment is invalid because it does not state an offense. *See Standard Oil Co. v. United States*, 307 F.2d 120, 130 (5th Cir. 1962). The government responds that the indictment does not allege that these transactions were illegal in and of themselves but that they lost their legal character because they were used to bring about the unlawful object of the scheme, obstruction of the IRS.

The government's position is correct: "it is well settled that acts which are themselves legal lose their legal character when they become constituent elements of an un-

---

1. Only counts 1–3 applied to defendant Eisenberg; all 11 counts applied to either or both of the defendants Hajecate.

lawful scheme." *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 709, 82 S.Ct. 1404, 1415, 8 L.Ed.2d 777 (1962). Thus, these transactions are not "equally" capable of legal interpretation, and the government is not, as defendants' claim, testing the legality of silver straddles in this case. In the context of count one's allegation of conspiracy and recital of other illegal acts, these two transactions lose their legal character and do not render count one invalid.

■ Next, the defendants allege that count one failed to particularize the alleged scheme.

The test to determine the sufficiency of an indictment is well established. An indictment is sufficient if it contains the essential elements of the offense so that it fairly informs the defendant of the charges against him and if it adequately enables the defendant to be protected against further prosecution for the same offense. Furthermore, an indictment is to be read in light of its purpose, which is to inform the accused of the charges against him. Its validity is governed by practical, not technical, considerations.

*United States v. Mouton*, 657 F.2d 736, 739 (5th Cir. 1981) (per curiam) (citations omitted). Conspiracy indictments have been given particularly careful scrutiny:

It is our affirmative duty to carefully scrutinize indictments under the broad language of the conspiracy statute because of the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the guilty.

*United States v. Porter*, 591 F.2d 1048, 1057 (5th Cir. 1979).

■ In examining a conspiracy indictment, the first test is to ascertain whether it goes beyond the generic terms of 18 U.S.C. § 371 and the statutes violated by the conspiracy to allege specific details about the scheme. *See Van Liew v. United States*, 321 F.2d 664, 669–74 (5th Cir. 1963). The IRS obstruction claim easily passes this test. A concise paragraph makes the allegation, and numerous "overt acts" and "means and methods" are cited in support in the remainder of count one. This has rendered count one longer and more complex than the other counts, yet it is still the plain and concise statement required by Fed.R.Crim.P. 7, since it outlines the essential elements of the complex conspiratorial scheme charged against the defendants. Unnecessary detail not found in count one was made available to defendants through two lengthy bills of particulars.

Defendants posit several specific failures to particularize that we must address. First, they claim that an allegation of Eisenberg's purpose in obstructing the IRS is fatally lacking. This argument has no merit. Eisenberg is clearly alleged to be a conspirator, and he thereby shares the purposes of the conspiracy, which are also clearly alleged in the indictment.

Second, defendants claim a lack of clarity as to whose taxes the IRS was obstructed from ascertaining. This lack of clarity allegedly arises from reading the indictment and the government's answers to a bill of particulars. The government responds that the indictment reveals that the taxes at issue are those of the Hajecates and that the four corporations that they allegedly owned were used in the obstruction. Thus, the government stated in response to the bill of particulars that the IRS obstruction charge involved all six taxpayers.

We see no flaw here. The defendants see an inconsistency between the indictment and the bill of particulars where none exists. They are clearly on notice from the indictment that the obstruction charge goes to the Hajecates' taxes only and that the four corporations were used to conceal those taxes.

■ Even if the bill was inconsistent with the indictment, the proper remedy is not dismissal of the indictment but clarification of the bill. The indictment here, unless properly amended or superseded, constitutes the full statement of the charges against the defendants. They face no additional jeopardy from a bill, since it cannot be used to amend an indictment, *see*

*United States v. Willoz*, 449 F.2d 1321, 1323 (5th Cir. 1971). It is the government that suffers if the bill goes beyond the indictment and improperly adds new charges. Thus, any inconsistency here does not harm the defendants in a constitutional sense, since the *indictment* is clear and determines the issues of notice and jeopardy.[2]

Finally, the defendants complain of ambiguity in the definitions of several terms in the indictment—"shell company," "affiliates," and "utilized and controlled." We believe that they are clear in their contexts and that any ambiguity does not rise to the level of a constitutional defect. Therefore, the appropriate remedy is to request a bill of particulars, not dismiss the indictment.

■ Overall, then, there is no defect in the first object of count one. What the defendants seek in many of their allegations is essentially the disclosure by the government of its full theory of the case and all the evidentiary facts to support it. That is not and never has been required at the indictment stage—the only requirements are notice to the defendants and preclusion of double jeopardy. The government need do no more in the indictment. The ready remedy of a motion for a bill of particulars is available to add specifics beyond those required for the indictment to pass constitutional muster, *see United States v. Williams*, 203 F.2d 572, 574 (5th Cir.), *cert. denied*, 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 347 (1953), although, of course, even a bill of particulars cannot be required to compel revelation of the full theory of the case or all the evidentiary facts, *see United States v. Murray*, 527 F.2d 401, 411 (5th Cir. 1976); *United States v. Bonnet*, 247 F.Supp. 415, 417 (E.D.La.1965) (Ainsworth, J.). We conclude that the government has fulfilled its duty here in presenting a constitutionally adequate indictment under object one and in voluntarily furnishing two bills of particulars to assist the defendants.

*Obstruction of the Customs Service*

■ Defendants repeat their allegation of generic pleading as to this object. This allegation has no more merit against this object than it did against the object of obstruction of the IRS. The object is stated in a concise paragraph and supported by a lengthy list of overt acts and means and methods. We do not examine particular paragraphs of an indictment out of the context of the remainder of the indictment. *See United States v. Hand*, 497 F.2d 929, 934–35 (5th Cir. 1974), *adopted on rehearing en banc*, 516 F.2d 472, 477 (1975), *cert. denied*, 424 U.S. 953, 96 S.Ct. 1427, 47 L.Ed.2d 359 (1976). As we have oft repeated, an indictment's validity "is governed by practical, not technical, considerations." *United States v. Varkonyi*, 645 F.2d 453, 456 (5th Cir. 1981).

Contrary to defendants' claim that "none" of the alleged overt acts relate to obstruction of the Customs Service, we find that several do. The list of means and methods references this object, and this list is suffiently detailed to make it quite easy to ascertain which overt acts are involved in this object. This claim has no merit.

Finally, the defendants allege improper "pyramiding" of offenses under this object. This claim requires some explanation. Usually, withholding information from the Customs Service under 31 U.S.C. § 1121 is a misdemeanor. However, when done in furtherance of another offense it becomes a felony. *See* 31 U.S.C. §§ 1058, 1059. The government charges in count one that the section 1121 violation was in furtherance of a violation of both 18 U.S.C. §§ 371 and 1001. However, the defendants claim that the government has alleged no false statement in violation of section 1001; therefore, the charge is really a conspiracy in furtherance of a conspiracy, which is an impermissible pyramiding of charges.

Defendants' logic has a fatal flaw: the government has alleged a section 1001 violation. Section 1001 renders illegal inten-

---

**2.** We, of course, will not countenance government tactics that confuse defendants by creating inconsistencies between the indictment and the bill. However, the response to such abuse, not present here, is to request clarification of the bill, not to dismiss the indictment.

tional falsification and concealment, as well as false statements. The indictment clearly alleges intentional concealment of information that should have been reported to the Customs Service: "defendants . . . conceal[ed] their [foreign bank account] from the . . . United States Customs Service." (emphasis added).

This object is therefore valid in its entirety.

*False Statements on Income Tax Returns*

Defendants' success in attacking this object is predicated on the success of their attack on counts two through five, which contain the allegations of offenses under the false statement statute, 18 U.S.C. § 1001. Since we find these counts invalid, *infra*, this object is also invalid.

*Transfer of Currency Between the United States and the Cayman Islands*

This object is valid in its entirety.

*Conclusion*

■ Since in order to prosecute a conspiracy successfully the government must be able to point out two separate provisions, one making the act of conspiring a crime and another making the object of the conspiracy a crime, *see United States v. Meacham*, 626 F.2d 503, 507 (5th Cir. 1980), the government may not prosecute this conspiracy indictment under object three, which we have held invalid. However, the government may proceed on objects one, two, and four.

B. Counts Two through Five.

■ On their 1976 and 1977 income tax returns, the Hajecates concealed their offshore bank account by answering the following question "no": "Did you at any time during the taxable year have any interest in or signature or other authority over a bank, securities, or other financial account in a foreign country . . . ? Yes ____ No ____ If 'yes' attach Form 4683 (for definitions, see Form 4683)." Counts two through five indict the Hajecates for making false statements to a government agency in violation

of 18 U.S.C. § 1001, and indict Eisenberg for aiding and abetting them in violation of 18 U.S.C. § 2.

The defendants attack counts two through five in several ways. We find merit in one and uphold the dismissal of these counts.

When the government properly exercised its discretion and chose to indict the Hajecates under the general statute making false statements a federal crime, 18 U.S.C. § 1001, instead of under 26 U.S.C. § 7206 of the Internal Revenue Code, which specifically penalizes false statements on tax returns, it of course invoked all the precedent under section 1001. Part of that precedent is the "exculpatory no" doctrine formulated in this circuit in *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962). In *Paternostro* this court reversed a conviction under section 1001 of a man who allegedly knowingly and willfully made a false statement to an IRS special agent. This false statement was made under oath during investigative questioning by the agent. After reviewing the origins and history of the statute and surveying the case law, *see id.* at 301–05, the court in *Pasternostro* derived principles to guide the application of section 1001; a section designed primarily to prevent fraudulently obtaining claims, privileges, or employment from the United States. For liability to attach under section 1001, the defendant must "aggressively and deliberately initiate . . . [a] positive or affirmative statement calculated to pervert the legitimate functions of Government." *Id.* at 305. "[M]ere negative responses to questions . . . by an investigating agent . . . not initiated by the appellant" are not actionable under section 1001. *Id.*

This doctrine has evolved and spawned considerable progeny. In *United States v. Bush*, 503 F.2d 813 (5th Cir. 1974), this court dismissed a section 1001 indictment based on a taxpayer's signing of affidavits prepared by IRS officials that contained false statements. The taxpayer's signature was held to be essentially an "exculpatory no." In *United States v. Schnaiderman*, 568 F.2d

1208 (5th Cir. 1978), we held an oral denial to a question put to a defendant by a Customs agent on the defendant's arrival in the United States to invoke the doctrine.

Since the Hajecates made "mere negative responses" and in no way made an "aggressive" or "deliberate positive or affirmative statement," the question presented here is whether an "investigation" was occurring when the Hajecates answered that question on their tax returns. If so, the doctrine applies, and counts two through five fail.

The government claims that in all the "exculpatory no" cases an individual was singled out by a government official acting in a police capacity, e.g., an IRS agent, a Customs agent, magistrate, and so forth. This case is distinguishable, argues the government, since the question on the tax form applied to all similarly situated individuals: the Hajecates were not singled out for investigation. Therefore, there was no coercion or intimidation of the Hajecates, no confrontation that threatened their rights. Finally, the government points to the Supreme Court's characterization of income tax return questions as "neutral on their face," "not directed at those 'inherently suspect of criminal activities,'" and not involving "the compulsion to incriminate." *Garner v. United States*, 424 U.S. 648, 660–61, 96 S.Ct. 1178, 1185–86, 47 L.Ed.2d 370 (1976).

However, defendants point out that this question is a novel one on the tax form: it has absolutely nothing to do with the calculation of one's taxes. Thus it is in a kind of limbo, not "investigative" in the traditional sense of the "exculpatory no" doctrine, yet obviously not administrative. Seeking to characterize the nature of this question, we turn to the statute authorizing it, 31 U.S.C. § 1121, the regulation implementing the statute, 31 C.F.R. § 103.24 (1977), and the legislative history undergirding both.

The statute declares:

(a) The Secretary of the Treasury, having due regard for the need to avoid impeding or controlling the export or import of currency or other monetary instruments and having due regard also for the need to avoid burdening unreasonably persons who legitimately engage in transactions with foreign financial agencies, shall by regulation require any resident or citizen of the United States or person in the United States and doing business therein, who engages in any transaction or maintains any relationship, directly or indirectly, on behalf of himself or another, with a foreign financial agency to maintain records or to file reports, or both, setting forth such of the following information, in such form and in such detail, as the Secretary may require:

(1) The identities and addresses of the parties to the transaction or relationship.

(2) The legal capacities in which the parties to the transactions or relationships are acting, and the identities of the real parties in interest if one or more of the parties are not acting solely as principals.

(3) A description of the transaction or relationship including the amounts of money, credit, or other property involved.

(b) No person required to maintain records under this section shall be required to produce or otherwise disclose the contents of their records except in compliance with a subpoena or summons duly authorized and issued or as may otherwise be required by law.

The Secretary of the Treasury has elected to obtain these "reports" as part of the annual federal income tax returns required of all citizens:

Each person subject to the jurisdiction of the United States (except a foreign subsidiary of a U. S. person) having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country shall report such relationship as required on his Federal income tax return for each year in which such relationship exists, and shall provide such information concerning each such account as shall be specified in a special tax form to be filed by such person.

31 C.F.R. § 103.24 (1977). The Supreme Court has characterized the purpose of the Bank Secrecy Act of 1970, of which section 1121 is a part, as follows: "The express purpose of the Act is to require the maintenance of records, and the making of certain reports, which 'have a high degree of usefulness in criminal, tax or regulatory investigations or proceedings.'" *California Bankers Association v. Schultz*, 416 U.S. 21, 26, 94 S.Ct. 1494, 1500, 39 L.Ed.2d 812 (1974), *quoting* 12 U.S.C. §§ 1829b(a)(2), 1951; 31 U.S.C. § 1051. This characterization is amply supported by the legislative history of the Act, where we find a presumption by Congress that secret foreign bank accounts and secret foreign financial institutions are inevitably linked to criminal activity in the United States. *See* H.R.Rep. No.975, 91st Cong., 2d Sess. 4–5 (1970), *reprinted in* 1970 U.S.Code Cong. & Ad. News 4394, 4397–98; S.Rep.No.1139, 91st Cong., 2d Sess. (1970); *Foreign Bank Secrecy and Bank Records: Hearings on H.R. 15073 Before the House Comm. on Banking and Currency*, 91st Cong., 1st & 2d Sess. (1969–70); *Foreign Bank Secrecy: Hearings on S. 3678 & H.R. 15073 Before the Subcomm. on Financial Institutions of the Sen. Comm. on Banking and Currency*, 91st Cong., 2d Sess. (1970).

Based on the language of the statute, the Supreme Court characterization of it, and its legislative history, we are compelled to hold that this question must be classified as investigative and that therefore the "exculpatory no" doctrine applies here. We are quick to assuage the government's fears that this holding sanctions false answers to any tax return question. First, our holding covers only this question on a tax return as illuminated by the statute that permits it. We do not deal today with questions such as this on other government forms, questions that are administrative in nature and that are related to the computation of taxes, or questions with a different statutory basis. Further, this doctrine is *only* a creature of section 1001; the government may still prosecute fraudulent tax returns containing this question under the perjury statute of the IRC, 26 U.S.C. § 7206.

With these limitations on our holding, we believe it to be a correct application of the "exculpatory no" doctrine that will not hamper legitimate government functions.

C. Counts Six through Eleven.

Counts six through nine allege failures by the Hajecates to report transportation of currency on four dates in violation of 31 U.S.C. §§ 1059(1) and 1101. Counts ten and eleven deal with the Hajecates' failure to make annual reports of a foreign bank account in violation of 31 U.S.C. §§ 1121 and 1059(1).

Before the government can prosecute under 31 U.S.C. § 1059, it must allege that the violation was committed in furtherance of the commission of another violation of federal law or committed as part of a pattern of illegal activity involving transactions exceeding a specified dollar amount. In counts six through eleven, the government alleges that the companion crimes necessary for a prosecution under section 1059 were violations of 18 U.S.C. §§ 371 and 1001. However, in none of these counts does the government provide the Hajecates with notice of the violations of federal law that they are accused of under sections 371 and 1001. While the implicit reference may be to the prior counts in the indictment, such an implicit reference does not satisfy the requirements of due process. Fed.R.Crim.P. 7(c) declares that allegations made in one count may be incorporated by reference in another count. But this court long ago held that while the specificity required in an indictment can be achieved by incorporation of another count, this incorporation must be express, not implicit. *See Davis v. United States*, 357 F.2d 438, 440 & n.2 (5th Cir.), *cert. denied*, 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966).

This simple oversight by the government—failure to incorporate a prior count expressly—renders counts six through eleven defective as to the section 1059 allegations. These counts simply do not provide sufficient notice to the defendants of the sections 1001 and 371 crimes

with which they are charged. *See Van Liew, supra.*

As to the sections 1101 and 1121 allegations in counts six through eleven, the record reveals that the defendants never made a *Davis*-based attack on them, and we do not pass on their sufficiency under *Davis.* In addition, we see no merit in the other defects the defendants have alleged. Therefore, counts six through eleven remain valid in part.

D. Conclusion.

To summarize, we uphold the dismissal of counts two through five in their entirety and the dismissal of portions of counts one and six through eleven by the district court but reverse the dismissal of (1) count one as to objects one, two, and four, and (2) portions of counts six through eleven.

III. THE HAJECATES' CROSS-APPEAL.

The Hajecates cross appeal the denial by the district court of dismissal of the entire indictment based on prosecutorial vindictiveness. The factual basis of this claim is that in 1979 two grand juries in the Southern District of Texas returned 84- and 29-count indictments against the Hajecates and others. These indictments were dismissed by the district court, but their dismissal was reversed and remanded by this court on appeal in *United States v. Uni Oil, Inc.,* 646 F.2d 946 (5th Cir. 1981). While the appeal from dismissal of these indictments was pending before this court, the government convened another grand jury and sought and obtained the indictment at issue here. The Hajecates immediately moved to dismiss the indictment, alleging that it was vindictive. The district court denied this motion, and the Hajecates took this appeal.

■ We need go no further than an examination of our jurisdiction to entertain this appeal in order to resolve this issue. The order from which the defendants Hajecate appeal is an interlocutory order, and this court has recently ruled that an interlocutory appeal does not lie from the denial of a pretrial motion to dismiss for prosecutorial vindictiveness. *United States v. Gregory,* 656 F.2d 1132 (5th Cir. 1981). We are bound by *Gregory* and therefore have no jurisdiction to entertain this cross appeal by the Hajecates.

APPEAL AFFIRMED IN PART AND REVERSED IN PART AND REMANDED; CROSS–APPEAL DISMISSED.

GARWOOD, Circuit Judge, concurring in part and dissenting in part.

I concur in the dismissal of the Hajecates' cross-appeal, and join in all of the majority opinion related thereto.

I likewise agree with the majority's holdings as to counts six through eleven and join in so much of the opinion as deals with those counts.

However, the majority, having held counts six through eleven valid in part and invalid in part, nevertheless holds the related portions (the second and fourth sets of object offenses) of the conspiracy count (count one) entirely valid. I respectfully dissent from this holding. I would hold these object offense allegations invalid to the extent they seek to charge that the violations of 31 U.S.C. §§ 1101 and 1121 were "in furtherance of the commission of violations of" 18 U.S.C. §§ 371 and 1001.

The "in furtherance" allegations are obviously designed to convert these object offenses from a 31 U.S.C. § 1058 misdemeanor into a section 1059(1) felony. Although count one expressly incorporates the remaining counts, nowhere in the entire indictment is the conduct allegedly constituting the "in furtherance" offenses identified in even the most general way. Neither on brief nor on argument does the government favor us with *any* such identification. The majority suggests that the conduct constituting the "in furtherance" offenses is concealment of the foreign bank account from the Customs Service. So far as I am aware, the only obligations to disclose such accounts are those imposed under section 1121, or at least under other sections of the 1970 Bank Secrecy Act, Pub.L.91–508, of which sections 1058, 1059, 1101, and 1121 are a part. Accordingly, such an offense

would not be an "other violation of Federal law" as required by section 1059(1). Nor does dragging the same conduct in through the back door by labeling it a violation of 18 U.S.C. §§ 371 and 1001 enhance the government's position in this regard. So far as I am aware, the offense of conspiring to commit a conspiracy is unknown to the federal criminal law. Moreover, "defrauding" the government with respect to performance of its functions under the Bank Secrecy Act, or concealing (or conspiring to conceal) something within the jurisdiction of the Treasury Department under such Act, cannot properly constitute an "enhancing" offense under section 1059(1). The contrast between subsections (1) and (2) of section 1059 makes it plain that the former applies only to "activity not involving violations of the Bank Secrecy Act." *See United States v. Beusch*, 596 F.2d 871, 878 (9th Cir. 1979). Accordingly, I would hold the second and fourth sets of object offenses under count one valid to the extent of charging section 1058 misdemeanor violations of sections 1101 and 1121, and invalid to the extent of charging section 1059(1) felonies.

The majority upholds the validity of the first object offense of the conspiracy count, defrauding the United States by impeding the Internal Revenue Service in the "assessment, and collection of income taxes." I respectfully disagree and would hold this portion of count one invalid as being excessively vague and general by reason of its failure to give any indication of whose income taxes are involved. Although the remaining counts charge the substantive violations which form the second and subsequent sets of object offenses in the conspiracy count, and are expressly incorporated in it, none of the remaining counts supports the first object offense in count one. The government in its brief on appeal took the position that the relevant taxes are those of Tom and Mick Hajecate, and the majority adopts this construction of the indictment. However, in its bill of particulars the government took the position that this portion of count one also related to the income taxes of Uni Oil, Inc., Hajecate Oil and Gas, Inc., MAPCO, and H. C. Iran, Ltd. On oral

argument government counsel, when questioned about this discrepancy, disavowed the position taken in the brief, and said the bill of particulars was correct, except that the count did not relate to MAPCO's income taxes.

As reproduced (and apparently slightly reduced in size) in the government's brief, count one is approximately nine and a half pages in length, and is extremely complex and confusing. While certainly it should be read as a whole, nevertheless, when so read it fails to state, or even clearly infer, whose income taxes are involved. One of the means alleged to effectuate the conspiracy is "engaging in a 'silver straddle' in June 1977 in order to create an apparent paper loss to offset *the profits of MAPCO*" (emphasis added) in the event the government discovered the Hajecates' interest in and control over MAPCO's secret bank account. This suggests a concealment of MAPCO income; yet, the government has twice told us, and the majority agrees, that MAPCO's taxes are not involved. Another alleged means of the conspiracy was a sham bank loan to Hajecate Oil and Gas, Inc. and Tom and Mick Hajecate, which suggests that the former's taxes may be included. However, the government's intermediate position, with which the majority agrees, is that such corporation's taxes are not in issue.

The conspiracy alleged in the indictment covers a three-year period, and it seems to me to be vital for double jeopardy purposes to know whose taxes the indictment charges that defendants conspired to defraud the government of. If, for example, the indictment does not charge a conspiracy during that time to defraud the government of MAPCO's or Uni Oil's taxes, does it protect defendants against a subsequent charge for such offense? The government has taken three different positions regarding the meaning of the indictment in this connection, and on each occasion the government's action appears to have been deliberate and considered and taken in full awareness of its significance. Under the circumstances, count one fails to adequately identify the first object offense of the con-

spiracy. Accordingly, I would hold this portion of count one invalid.

The majority holds counts two, three, four, and five invalid under the "exculpatory no" doctrine. The offenses charged in these counts also constitute the third set of object offenses under count one, and the majority, for the same reason, also holds this portion of count one invalid. I respectfully disagree with these holdings, as I would not extend the "exculpatory no" doctrine to answering this or similar questions on income tax returns. I fully agree with the majority that the question is investigatory and has nothing to do with the calculation or determination of income taxes. Nevertheless, the question appears on virtually all tax returns, and. is not directed at any selected group or groups thought more likely than others to include those engaging in illegal activities. Moreover, while the question is asked for an investigatory purpose, the manner and setting in which the question is both asked and answered is distinctly *not* investigatory, intimidating, or confrontational. The respondent is free to take his or her time and to consult legal or tax advisors, all without any knowledge on the part of the government, before answering (or declining to answer), and of course the answer need not be given in person. The "exculpatory no" doctrine is a judicially created exception to the statutory law, and I do not think it should be extended so as to exculpate, under these circumstances, the making of a deliberately false statement on such an official document filed with the government.

One matter remains to be considered respecting counts two through five and the related portion of the conspiracy count. The defendants maintain that these offenses should have been charged under 26 U.S.C. § 7206, which denounces the willful making of a tax return known to contain a false statement as to a material matter. As defendants correctly point out, this section of the Internal Revenue Code of 1954 was enacted subsequently to 18 U.S.C. § 1001, the latest version of which was enacted in 1948. Section 7206 forms a part of chapter 75 of the 1954 Code which was designed to incorporate in one place the previously scattered criminal provisions dealing with violations of the Internal Revenue Code. *See* H.R.Rep.No.1337, 83d Cong., 2d Sess. *reprinted in* [1954] U.S.Code Cong. & Ad. News 4017, 4135, 4573. In the Internal Revenue Code Congress has provided a carefully graduated scheme of criminal penalties. For example, willful tax evasion is punishable by imprisonment of up to five years, 26 U.S.C. § 7201, while willfully failing to file a return or pay the tax due is punishable by imprisonment for up to only one year, 26 U.S.C. § 7203. Making an intentional misstatement of material fact on a return—regardless of any intention to evade taxes—is an offense of intermediate severity, the maximum prison term being three years, 26 U.S.C. § 7206. Significantly, the House version of section 7206 provided for a penalty of up to five years' imprisonment and a $10,000 fine, while the Senate version, which was ultimately adopted, reduced the maximum to three years and $5,000. *Compare* H.R.Rep.No.1337, *supra* at 4573 *with* S.Rep.No.1622, 83d Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad.News 4621, 5252 and H.R.Rep.No.2543 (Conference Rep.), 83d Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad. News 5280, 5344.

Proof of a violation of 26 U.S.C. § 7206(1) necessarily encompasses *all* elements required to establish a violation of 18 U.S.C. § 1001 (although, of course, the converse is not true). Yet the maximum penalty for violation of section 1001 is confinement for five years and a $10,000 fine, the very penalty which Congress rejected as excessive for a violation of section 7206, the later and more specific statute.

In these circumstances, I believe there is a substantial question as to whether section 1001 can properly be used to procure a higher penalty for what is in fact a violation of section 7206. *See Busic v. United States*, 446 U.S. 398, 405–07, 100 S.Ct. 1747, 1752–53, 64. L.Ed.2d 381, 388–90 (1980); *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70, 78 (1978); *United States v. Meacham*, 626 F.2d 503,

508 n. 6 (5th Cir. 1980); *United States v. Beer*, 518 F.2d 168 (5th Cir. 1975).[1] One is indeed reluctant to hold that Congress simply wasted its time by reducing the maximum penalty under section 7206.

Nevertheless, I do not believe that this problem goes to the sufficiency of the indictment. Counts two through five sufficiently allege facts constituting a violation of 26 U.S.C. § 7206. Defendants do not claim otherwise—indeed they claim that an offense *is* alleged under section 7206.[2] Under the express provisions of Rule 7(c)(3), Fed.R.Cr.P., citation of the wrong statutory provision is not grounds for dismissal of the indictment "if the error . . . did not mislead the defendant to his prejudice." Here there is no assertion that any of the defendants were prejudicially misled, nor does the record suggest such. *See United States v. Welch*, 656 F.2d 1039, 1059 n. 26 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982); *United States v. Duncan*, 598 F.2d 839, 848 n. 4, 854 n. 11 (4th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).[3]

Accordingly, I would not dismiss any of counts two through five, nor that part of

count one relating to these substantive counts.

---

1. On the other hand, a similar contention favoring prosecution under the 1939 Internal Revenue Code analogue to section 7206 was rejected in *Cohen v. United States*, 201 F.2d 386, 392–93 (9th Cir. 1953) (note, however, that under the 1939 Code the penalty for a willfully false return was five years and a $2,000 fine, and there was no indication of a specific congressional intention to reduce the maximum sentence). In *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), the prosecution was under section 1001 but the question of whether it should have been under section 7206(1) was neither raised nor discussed. In *United States v. Knox*, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969), it does not appear whether the wagering tax return form was such as would be required for prosecution under section 7206(1). *See also United States v. Carter*, 526 F.2d 1276 (5th Cir. 1976) (however, the opinion seems to view each of the statutes involved as requiring proof of some element which the other did not).

2. Eisenberg is charged in counts two and three with aiding and abetting Tom and Mick Hajecate in the offenses respecting their 1977 income tax returns. Since the requisite mental state is alleged as to the Hajecates respectively, as well as to Eisenberg, Eisenberg would be

chargeable under 18 U.S.C. § 2(a) for aiding and abetting the Hajecates' violation of 26 U.S.C. § 7206(1). Clearly 18 U.S.C. § 2(a) is not in terms restricted to offenses denounced in Title 18, and there is no reason to deny its application to the offenses denounced in Title 26. *See, e.g., United States v. Johnson*, 319 U.S. 503, 514–15, 63 S.Ct. 1233, 1238–39, 87 L.Ed. 1546, 1555–56 (1943). Eisenberg could alternatively be charged under 26 U.S.C. § 7206(2). The penalty in each instance would be the same.

While it is not expressly alleged that the returns were signed under penalties of perjury, it is alleged that in each instance the return signed was the "Individual Income Tax Return, Form 1040" for the respective years 1976 and 1977. These official forms, of which judicial knowledge can be taken, contain a printed declaration that the return is made under the penalties of perjury, and hence satisfy the requirement in this regard of section 7206(1).

3. There is no question of a guilty plea having been taken under a misapprehension of the maximum sentence, nor, of course, has the sentencing stage been reached.